[Cite as *Taneff v. Lipka*, 2019-Ohio-887.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Thomas Taneff, Successor Ancillary Administrator of the Estate of Selena Ann Cramer, aka Selina Cramer, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | |
| | | No. 18AP-291 |
| Callie C. Lipka, Administrator of the Estate of Selena Ann Scali Cramer in the Probate | : | (Prob. No. 567794A) |
| Court of Limestone County, Alabama et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees, | : | |
| | : | |
| (Marilyn A. Cramer et al., | : | |
| | : | |
| Defendants-Appellants). | : | |

## D E C I S I O N

### Rendered on March 14, 2019

**On brief:** *Thomas Taneff Co., LPA, Thomas Taneff,* and *Taylor Sayers,* for appellee Thomas Taneff. **Argued:** *Taylor Sayers.*

**On brief:** *The Cramer Law Group, LLC,* and *Marilyn A. Cramer,* for appellants. **Argued:** *Marilyn A. Cramer.*

APPEAL from the Franklin County Court of Common Pleas, Probate Division

SADLER, J.

{¶ 1} Defendants-appellants, Marilyn A. Cramer and Carrie A. Chaplin ("appellants"), appeal from the March 22, 2018 judgment entry of the Franklin County Court of Common Pleas, Probate Division, approving attorney fees for the work of plaintiff-

appellee, Thomas Taneff ("appellee"), as successor ancillary administrator in a R.C. Chapter 2129 land sale action and imposing attorney fees and costs as sanctions for Ms. Cramer's willful violations of Civ.R. 11 and R.C. 2323.51.[1]  For the following reasons, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  Selena Cramer ("decedent") died on September 28, 2007.  She had four adult children: Marilyn Cramer, Carrie Chaplin, Myron Cramer, and Callie Lipka.  The full estate of the decedent is being administered by Ms. Lipka in Limestone County, Alabama.

{¶ 3}  On July 30, 2014, an ancillary administration for the estate (Franklin P.C. No. 567794) was opened in Ohio pursuant to Ohio Revised Code Chapter 2129 for the sole purpose of disposing of a single piece of Franklin County real property ("the property"), a residence owned by the decedent, for the benefit of the estate.  Ms. Cramer, an attorney licensed to practice in Ohio, was named administrator of the ancillary estate in November 2014.

{¶ 4}  Infighting among the siblings caused a number of motions to be generated thereafter, including a motion filed by Ms. Lipka and Mr. Cramer to remove Ms. Cramer as the ancillary administrator.  On July 17, 2015, a magistrate's decision removed Ms. Cramer as ancillary administrator.  The magistrate's decision found that at a June 2015 hearing on the motions, all the siblings agreed to sell the property rather than transfer it to an heir and jointly moved the court to allow the property to be sold.  Despite the agreement to sell the property, the magistrate noted the lack of any progress on administration of the ancillary estate and determined the estate had an interest in having an independent successor administrator who would not be distracted by "rehashing issues of the underlying estate, which are not before this court."  (July 17, 2015 Mag.'s Decision at 6.)  Appellants filed objections to the magistrate's decision.  The probate court judge overruled the objections and adopted the magistrate's decision to remove Ms. Cramer on December 23, 2015.  Appellants did not appeal the December 23, 2015 judgment.

{¶ 5}  Appellee was appointed as an independent successor ancillary administrator on January 14, 2016 and commenced the statutory process to sell the property.  On January 19, 2016, appellee filed a complaint to sell real estate pursuant to R.C. Chapter 2127

---

[1] We note that appellant filed a second notice of appeal on April 24, 2018, assigned case No. 18AP-295.  We dismissed that case because the notice of appeal was identical to the notice of appeal filed in this case.

and served the appropriate parties. The land sale action was assigned Franklin P.C. No. 567794A. Ms. Lipka and Mr. Cramer both filed entries of appearance and their consent to the sale.

{¶ 6} Appellants filed nearly identical answers; Ms. Cramer's answer was untimely. The answers contended "[t]hough the heirs would like to sell the property, it is not true that a sale is 'necessary to pay debts' " and asked the court to dismiss the land sale complaint entirely, deny any sale, "[d]eny [appellee]'s request for permission to breach the existing contract" Ms. Cramer negotiated with another broker, reinstate Ms. Cramer as administrator, or, in the alternative, replace him with a "more knowledgeable and qualified administrator." (Feb. 23, 2016 Appellants' Answers at 2, 4.) After appellee filed a motion to strike Ms. Cramer's answer and for default judgment, Ms. Cramer filed an opposition to the motion citing the probate court clerk's "suspicious and troubling" handling of her answer, which, "whether deliberate or through incompetence," caused her answer to be untimely filed. (Mar. 14, 2016 Ms. Cramer's Memo. in Opp. at 16.)

{¶ 7} On April 28, 2016, a magistrate order deemed Ms. Cramer's answer timely in the interest of justice and denied appellee's motion for default judgment. The magistrate's decision warned Ms. Cramer against "repeated unsupported allegations of court misconduct," reminded Ms. Cramer appellee is now the ancillary administrator and no party may interfere with his duties and responsibilities, and "continued interference with the orderly administration of [the land sale] action may result in sanctions." (Apr. 28, 2016 Mag.'s Order at 6-7.)

{¶ 8} Appellee filed a motion to find sale necessary and order for new appraisement on May 13, 2016, and moved the court to approve an appraiser. On June 10, 2016, hours prior to a hearing on appellee's motion to move forward with the land sale process, appellants filed an emergency motion of heirs to remove ancillary administrator appellee for negligence and misconduct and to prevent further damage to the estate property by him. In addition to allegations of negligence and misconduct and calling for the court to revoke appellee's appointment, the motion alleged appellee hired a real estate agent without authority to do so and who was a "hired thug" and "goon." (June 10, 2016 Mot. & Memo. at 3, 6.) The motion states twice that Ms. Cramer secured the front door to the property

with her own locks, and Ms. Cramer took issue with the broker removing the locks she installed.

{¶ 9}  On June 13, 2016, the magistrate issued two orders which collectively denied appellants' emergency motion as being without merit, found the land sale necessary, and ordered a new appraisement on the property.  The magistrate's order stated that while Ms. Cramer objected to finding the sale necessary at the hearing because she believed there may be other means of disposing of the property, appellants did not object to the property being sold and would not affirmatively state that the property should be transferred to an heir. That day, the probate court signed a journal entry finding the sale necessary and ordering new appraisement.

{¶ 10}  On June 29, 2016, appellants filed a document entitled objections by heirs to the magistrate's decision and motion to supplement after receipt and review of the transcript of the June 10, 2016 hearing.  On August 31, 2016, the probate court entered a judgment entry construing the document as a motion to set aside the magistrate's order, deeming it timely in the interest of justice, and denying the motion.  In doing so, the probate court noted appellants continued to make previous arguments that appellee should be removed as administrator without credible evidence to suggest he neglected his duty or engaged in any conduct warranting his removal, that "[f]amily disharmony has delayed this ancillary administration," and that further actions delaying and complicating the sale by filing unnecessary motions and pleadings could result in sanctions.  (Aug. 31, 2016 Jgmt. Entry at 5.)  Appellants did not appeal the August 31, 2016 judgment.

{¶ 11}  In September 2016, appellee filed a return of order of appraiser for the amount of $30,000 and, later, an order of private sale and real estate purchase contract stating a price of $32,000 along with a motion to confirm sale and order deed and distribution.  The hearing on the motion to confirm sale was conducted on November 9, 2016, and a magistrate's order confirming sale was filed with the court on November 23, 2016.

{¶ 12}  Ms. Cramer filed a motion on behalf of herself and Ms. Chaplin asking for a stay of the magistrate's decision pending resolution of possible future objections and appeals.  Appellee filed a response contending further delay is not in the best interest of the estate and stating Ms. Cramer had defamed the property by filing a notice of lis pendens

with the Franklin County Recorder and contacting the title company to inform them "the heirs" did not consent to the sale or to appointment of appellee as administrator and "title to the property will be tied up in litigation for quite some time." (Ex. C, attached to Nov. 29, 2016 Appellee's Resp. to Mot. to Stay.) A judgment entry denying Ms. Cramer's motion to stay was filed on November 30, 2016, and appellants thereafter both filed objections to the magistrate's November 23, 2016 order confirming sale.

{¶ 13} In December 2016, appellee filed a motion for supplemental cost reimbursement in order to cover an additional year of property insurance. At this time, he additionally filed a complaint to declare Ms. Cramer a vexatious litigator, for abuse of process, for tortious interference with contract, and for defamation of title against Ms. Cramer, which was assigned Franklin P.C. No. 567794B. Furthermore, on January 6, 2017, appellee filed a motion for sanctions against appellants and/or Ms. Chaplin's attorney pursuant to Civ.R. 11 and R.C. 2323.51. Appellants filed a memorandum contra appellee's motion for sanctions and cross-motion for sanctions against appellee.

{¶ 14} On February 10, 2017, the ancillary estate and land sale action (Franklin P.C. Nos. 56774 and 56774A) were transferred to the docket of a visiting judge. The attorney representing Ms. Chaplin filed a motion to withdraw as her attorney, which the probate court granted.

{¶ 15} On March 30, 2017, the probate court overruled the objections of appellants and adopted the November 23, 2017 magistrate's decision confirming the sale. The probate court additionally granted appellee's December motion for supplemental cost reimbursement.

{¶ 16} In early May 2017, appellee filed a status letter and emergency motion for a status conference stating the property had been broken into and damaged extensively, resulting in the buyer being no longer interested in purchasing the home at the agreed on price. After renewing information presented at the status conference, the magistrate ordered appellee to file a renewed motion to confirm sale and order deed and distribution and ordered any competing bids to purchase the property, specifically including the alleged "$101,000+" offer repeatedly referenced by Ms. Cramer, to be submitted to appellee by May 26, 2017 or those bids would be forfeited. (May 22, 2017 Mag.'s Order at 2.) The order stated that any objections must comply with Civ.R. 53(D).

{¶ 17} On May 22, 2017, appellee filed a motion to vacate the entry confirming the first sale and separately moved to confirm a second sale secured in the amount of $39,000 and order deed and distribution. Appellants did not submit any competing offers but, instead, filed a motion to strike appellee's motion to confirm sale due to appellee's alleged failure to follow the briefing schedule and violations of professional conduct and court rules and filed an opposition to appellee's motion, which opposed the "suspicious" pending sale of the property and allegedly excessive and unreasonable fees. (May 30, 2017 Appellants' Opp. to Mot. to Confirm Sale at 1.) Appellee filed a second motion for additional fees and costs on April 4, 2017.

{¶ 18} On June 7, 2017, the magistrate granted appellee's motion to vacate, confirmed the new sale, and ordered deed and distribution of the proceeds of the sale. The magistrate noted a sale had been returned above the appraisal price, and no party submitted alternative bids by the deadline stated in the magistrate's prior order.

{¶ 19} On June 19, 2017, appellants filed a motion to stay the magistrate's order confirming sale pending possible future objections or appeal. The memorandum in support of the motion notes the stay would avoid an escalation in litigation, and without a stay, "any potential buyer will be embroiled in litigation of the title." (June 19, 2017 Appellants' Memo. in Support of Mot. at 2-3.) After the time for filing objections had expired, on June 22, 2017, appellants then filed a 21-page document objecting to the June 7, 2017 magistrate's order confirming sale of the property. Attached to the objections, appellants provided the affidavit of a friend who stated he is interested in buying the property but was denied a fair opportunity to do so and an affidavit of the realtor Ms. Cramer had worked with when she was administrator who estimated the value of the house to be between $85,000 and $100,000 prior to improvements. In the interest of justice, the probate court considered the objection in its entirety and overruled it on July 24, 2017; in the same order, the probate court denied appellants' motion to stay the magistrate's June 7, 2017 order. Appellants did not appeal the decision.

{¶ 20} Appellee received a letter dated October 25, 2017 from Ms. Cramer, admitted into evidence, that provides "[s]hould the [probate] court again ignore the law and issue a political and obviously retaliatory order, the [court of appeals] will certainly reverse it and the corruption will be exposed. * * * We are prepared to litigate wherever and however long

it will take to accomplish our mother's wishes and rectify the wrongs and unlawful conduct perpetrated by [Mr.] Cramer, [Ms.] Lipka, and the dishonest attorneys they retained." (Ex. A at 1, attached to Jan. 6, 2017 Appellee's Mot. for Sanctions.)

{¶ 21} The hearing on the merits of the motion for sanctions was held on October 27, 2017. On December 19, 2017, the probate court visiting judge issued a decision finding Ms. Cramer willfully violated both Civ.R. 11 and R.C. 2323.51 and that sanctions in the form of reasonable attorney fees and costs, to be quantified at a later date, would be assessed against Ms. Cramer. The entry denied all other pleadings, motions, and cross-claims related to sanctions not specifically addressed in the decision.

{¶ 22} The decision noted Ms. Cramer's "bad conduct and frivolous filings turned what should have been a simple land sale into a circus devoid of any respect to the court and its officers" and that she "failed to grasp the reality that when she was removed as ancillary administrator, she lost the ability to dictate the terms of sale." (Dec. 19, 2017 Jgmt. Entry at 21.) Specifically, regarding Civ.R. 11, the probate court found Ms. Cramer "willfully violated Civ.R. 11 when she drafted, read, and signed numerous baseless pleadings and other documents, which lacked grounds to support the allegations made, and which were filed for purpose of delay." (Dec. 19, 2017 Jgmt. Entry at 31.) The decision discusses five such filings in detail and cites generally the delay she caused by her repetitive pleadings which had no basis under the law, her continued reference to the "unsubstantiated mystery offer" that she insisted would occur following a future remodel of the property, and her raising irrelevant issues surrounding sibling infighting in the underlying full estate in Alabama. (Dec. 19, 2017 Jgmt. Entry at 26.)

{¶ 23} Regarding R.C. 2323.51, the probate court found Ms. Cramer "willfully violated R.C. 2323.51 when she conducted herself in a manner meant to harass and intimidate [appellee]." (Dec. 19, 2017 Jgmt. Entry at 31.) The court found her actions were "not warranted under existing law, and could not be supported by good faith arguments" but consisted instead of "supposition and innuendo that have no evidentiary support." (Dec. 19, 2017 Jgmt. Entry at 31.) Such actions, according to the probate court, were improper, caused unnecessary delay, and needlessly increased the cost of litigation.

{¶ 24} Specifically, the decision first found Ms. Cramer's actions when she was still administrator contributed to delay in administering the ancillary matter. Ms. Cramer failed

to open a land sale but instead filed a number of motions which did nothing to move the administration of the ancillary estate forward and instead were related to infighting over the full estate. Furthermore, after she was removed as administrator, Ms. Cramer admitted under oath to hiring a person to physically remove appellee's locks on the property with a crow bar and then acted without authority in placing her own locks on the doors. The judgment notes Ms. Cramer continued to keep appointments related to the property as if she were still administrator. The judgment cites two letters in which Ms. Cramer threatens use of the legal process to indefinitely stall the sale of the property. In the letter to the title agency, the probate court found Ms. Cramer also fabricated her representation of all the heirs and misrepresented appellee as a fraud when he was properly appointed. The probate court additionally discusses an instance in which Ms. Cramer arrived 45 minutes late to a hearing without advance notice or explanation and significantly disrupted the meeting and was disrespectful and cites to Ms. Cramer's filings and testimony during the October 27, 2017 hearing on sanctions. There, according to the probate court, Ms. Cramer reiterated issues already disposed of and continued to make unprofessional and baseless allegations against the probate court judge formerly on the case, appellee, and appellee's personal relationship with his wife.

{¶ 25} On February 15, 2018, one day before the scheduled hearing on fees and costs, Ms. Cramer filed a motion to postpone hearing and proceedings pending ruling on jurisdiction. The motion referred to an affidavit of disqualification Ms. Cramer attempted to file with the Supreme Court of Ohio to disqualify Judges Montgomery and Spicer from the case. At the February 16, 2018 hearing to consider fees and costs, the probate court denied Ms. Cramer's motion to stay because the Supreme Court rejected her affidavit due to noncompliance with timing requirements.[2]

{¶ 26} On March 22, 2018, the probate court filed a judgment entry addressing appellee's motions for supplemental fees and cost and his brief for supplemental fees and costs attributable to Ms. Cramer's violations of Civ.R. 11 and R.C. 2323.51. The probate court noted "[i]n this case, the sale was approved and confirmed," and, therefore, under R.C 2127.38, the court must determine what fees and costs are due to appellee as ancillary

___

[2] The Supreme Court allowed for refiling so long as it was submitted at least seven days before the next hearing. The record shows that on March 14, 2018, the Supreme Court denied Ms. Cramer's affidavit of disqualification against Judges Montgomery and Spicer on the merits.

administrator. (Mar. 22, 2018 Jgmt. Entry at 6.) The probate court found the work conducted by appellee and his staff completed "was largely reasonable and necessary to complete the land sale." (Mar. 22, 2018 Jgmt. Entry at 9.) After the probate court removed instances of "double billing" totaling $6,211.88 from the submitted fees, the probate court approved $61,221.18 in fees and $7,237.92 in costs, for a total of $68,459.10. (Mar. 22, 2018 Jgmt. Entry at 9.) The probate court then found $21,631.70 in fees and $624.95 for costs, for a total of $22,256.65 to be directly attributable to Ms. Cramer's sanctioned conduct. The probate court ordered, per the previous agreement of the parties, any remaining net proceeds of the land sale to be forwarded to the underlying estate in Alabama.

{¶ 27} Appellants filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 28} Appellant assigns the following as trial court error:[3]

(1.) The probate court erred by removing Attorney Marilyn Cramer, an Ohio heir and attorney, as ancillary administrator of her mother's estate, (a house in Columbus, Ohio, when there were no legal or factual grounds to replace her. Rather the judge acted after ex parte meetings and did so to appoint Thomas Taneff, with whom the judge is connected financially and politically.

(2.) The probate court, acting through its magistrate Kelly Green, erred by denying the heirs an evidentiary hearing and the right to cross-examine their adversary's witnesses, before arbitrarily depriving Attorney Cramer of her statutory priority for appointment, under O.R.C. §2113.06(A)(2).

(3.) The probate court erred by appointing Thomas Taneff as successor Ancillary Administrator, all the while concealing the financial and political connections between Taneff and the probate judge.

(4.) The probate court erred by denying the heirs' motion to remove Taneff for negligence and misconduct resulting in damage to the estate property and multiple violation notices emanating from the City of Columbus.

---

[3] Appellants indicate that assignments of error 1-10 relate to "Probate Case No. 567794 and Probate Spin-Off Land Sale, Case No. 567794A" and assignments of error 11-12 relate to "Probate Spin Off Case No. 567794B." (Appellants' Brief at xi, xiv.)

(5.)  The probate court erred by permitting Taneff to delay the administration by interfering with and breaching the contract the heirs had with their Columbus realtor and their sale of the house to an interested purchaser for $101,000, as well as Taneff's and the Court's preventing the heirs from selling the house to a second buyer or purchasing it themselves.

(6.)  The probate court erred by confirming the sale of the real property to Taneff's straw purchaser for $32,000, (roughly one third of the $101,000 price the heirs had negotiated with their buyer and realtor.)

(7.)  The probate court erred by finding that the unsupported, excessive and unreasonable fees and expenses Taneff requested, in excess of $76,421, (200% of Taneff's sales price for the property,) were "appropriate and necessary."  The Court erred by blindly accepting Taneff's bills, despite his failure to present any expert testimony, affidavits, or any other evidence in support of his invoices, under the lodestar or any other standard, to prove the reasonableness of his hourly rates, the reasonableness of the hours claimed, the necessity of the work performed, and the other burdens he bears under Loc.R. 71.7 and all of the case law.  (Taneff double and triple billed for work, billed for motions he lost, billed all hours as attorney time, rather than at the lesser rate of a fiduciary, billed for multiple persons when one was sufficient, and billed his secretary at $135 an hour, without justifying this exorbitant rate for a secretary when even certified paralegals in the Columbus, Ohio area average $17.56 an hour, and even though he failed to register his secretary as the Local Rules require, among other improprieties.

(8.)   The probate court erred by approving Taneffs fees charging the estate for multiple, substantive ex parte contacts with the court.

(9.)  The probate court erred by alleging that the heirs, by and through their attorneys, Marilyn Cramer and Gregg Garfinkel, willfully filed "numerous motions" with intent to harass and maliciously injure Taneff and delay the administration of the estate, when the record refutes the finding, in that neither Attorney Garfinkel nor Attorney Cramer filed "numerous motions and filings."  December 19, 2017 Entry.  The Court erred by imposing sanctions of $22,265.665 on Attorney Cramer, when, other than two scheduling requests and responses to Taneff's motions, she filed only one motion and

two objections during the more than two and a half years of Taneff's appointment.

(10.) The probate court erred by disregarding the nature and substance of the Heirs' filings, as well as the limited number of their filings, and by ignoring the fact that the heirs were represented by two experienced attorneys: Gregg Garfinkel and Marilyn Cramer, (Attorney Cramer with 40 years' experience, including almost 30 years with the U.S. Department of Justice as an Assistant U.S. Attorney and a Senior Trial Attorney with the Antitrust Division, and prior years as an Ohio Assistant Attorney General,) and Attorney Garfinkel, with approximately fourteen years' experience as a trial attorney, including years as a Special Counsel to the Attorney General,) when the court criticized Attorney Garfinkel and imposed excessive monetary sanctions against Attorney Cramer. They each testified that, not only did they have valid and strong legal and factual grounds for each and every one of their filings, they also would have prevailed, if before a fair and neutral adjudicator, rather than in a forum tainted with financial and political bias.

(11.) The probate court erred by holding in abeyance and failing to dismiss, with prejudice, Taneff's frivolous spin-off Case No. 567794B, for lack of subject matter jurisdiction, failure to state a claim, and lack of personal jurisdiction over heir and attorney for the heirs Marilyn A. Cramer. The Complaint relies upon O.R.C. §2323.51, which expressly does not apply to Attorney Cramer, who represents her client, Heir Ms. Carrie Chaplin, and Taneff failed to file the Complaint in the proper court of common pleas.

(12.) The probate court erred by approving nearly all of Taneff's alleged fees and costs of over $24,235.95, just in connection with his frivolous lawsuit against the heirs' attorney, contrary to the best interests of the estate, (when added to fees Taneff sought for the underlying probate, he requested fees and costs of over $76,421.48,) unlawfully rewarding his misconduct and breaches of his fiduciary duties to the estate, by filing a deliberately frivolous and harassing lawsuit against an heir and attorney for the heirs, in the probate court where he benefits from financial and political connections, all in a retaliatory attempt to prevent the heirs from asserting the heirs' constitutional and statutory rights to estate property.

(Emphasis omitted.) (Sic passim.)

## III.  LEGAL ANALYSIS

{¶ 29} As a preliminary issue, although appellants set forth 12 assignments of error for us to review, they have not separately argued each of those assignments of error in the body of the brief.  For example, in the first section of analysis, appellants set forth issues which they state pertain to the first through sixth assignments of error collectively.  As a result, appellants' brief violates App.R. 16(A)(7).[4]

{¶ 30} An appellate court has discretion to disregard an assignment of error presented for review if the party raising it "fails to argue the assignment separately in the brief, as required under App.R. 16(A)."  App.R. 12(A)(2).  *See, e.g., State v. Brown*, 10th Dist. No. 16AP-753, 2017-Ohio-7134, ¶ 14 (declining to address part of assignment of error not argued separately in the body of the brief).  However, in the interest of justice, we will proceed to determine the appeal based on the stated assignments of error and will address arguments and legal authority provided in appellants' analysis to the extent that we discern such arguments and legal authority support a particular assignment of error.  *See, e.g., Brown*; *In re J.A.G.*, 10th Dist. No. 08AP-823, 2009-Ohio-821, ¶ 9, quoting *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (refusing to consider arguments that did not correspond with any assignment of error because an appellate court " 'rules on assignments of error only, and will not address mere arguments' ").

### A.  Assignments of Error One, Two, Three, and Four

{¶ 31} Assignments of error one through four concern the ancillary administrator.  Specifically, appellants' first and second assignments of error contend the probate court erred by removing Ms. Cramer as ancillary administrator of her mother's estate and by doing so after "denying [appellants] an evidentiary hearing and the right to cross-examine their adversary's witnesses." (Appellants' Brief at xi.) Appellants' third and fourth assignments of error challenge the probate court's appointment of appellee as successor

---

[4] This court is tasked with determining the merits of an appeal based "on the assignments of error set forth in the briefs under App.R. 16, the record on appeal under App.R. 9, and, unless waived, the oral argument under App.R. 21."  App.R. 12(A)(1)(b).  Under App.R. 16(A)(7), "the appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  App.R. 16 and other similar procedural rules "are designed to promote the administration of justice and to eliminate undue delay."  *Robinson v. Kokosing Constr. Co.*, 10th Dist. No. 05AP-770, 2006-Ohio-1532, ¶ 6.

ancillary administrator and denial of appellants' motion to remove appellee for negligence and misconduct.

{¶ 32} In addressing these assignments of error, appellants assert, in general, that Ms. Cramer's removal and appellee's appointment resulted from financial and political connections between appellee and the probate court judge. Appellants contend the relationship of the court with appellee resulted in "biased rulings," whereby the probate court ignored appellee's negligence and misconduct, and the probate court insulted appellants and made "veiled threats to discourage and intimidate them from asserting their rights concerning their mother's estate." (Appellants' Brief at 27.) Appellants further allege appellee and the probate court judge and magistrate engaged in improper ex parte communications. Appellants believe their federal and state constitutional rights to due process were violated, and they were deprived of a "[n]eutral and [u]nbiased [a]djudicator." (Appellants' Brief at 21.) Appellants argue such errors render the judgment entry appealed in this case (regarding attorney fees and sanctions) "[v]oid [a]b [i]nitio." (Appellants' Brief at 21.)

{¶ 33} Because the judgment appealed here concerns the probate court's determination on sanctions and attorney fees, we initially must determine whether these assignments of error are properly before this court. An order of a probate court removing, or denying removal of, a fiduciary of an estate is a final, appealable order. *In re Estate of Nardiello*, 10th Dist. No. 01AP-281 (Oct. 31, 2001); *In re Estate of DePalma*, 10th Dist. No. 16AP-619, 2017-Ohio-397, ¶ 10. *See also In Re: Estate of LeMay*, 4th Dist. No. 82 CA 18 (July 1, 1983) (deciding appeal of probate court's decision on motion to set aside appointment of ancillary administrator); *In re Estate of Myers*, 1st Dist. No. C-940976 (Dec. 29, 1995) (deciding appeal challenging probate court's granting of a motion to strike an application for ancillary administration).

{¶ 34} The filing of a timely notice of appeal is a prerequisite to establishing jurisdiction in a court of appeals. App.R. 3(A); *State v. Alexander*, 10th Dist. No. 05AP-192, 2005-Ohio-5997, ¶ 17. A notice of appeal, which must designate the judgment, order, or part thereof appealed from, must be filed within 30 days of a judgment of the trial court. App.R. 3(D) and 4(A).

{¶ 35} Here, appellants' first four assignments of error are based on asserted errors in Ms. Cramer's removal, appellee's appointment, and the subsequent failure of the probate court to remove appellee. The order removing Ms. Cramer as ancillary administrator of her mother's estate was filed December 23, 2015, and the decision denying appellee's removal as the administrator was filed August 31, 2016. Appellants never filed an appeal from either of those orders. Rather, the instant notice of appeal designates the March 22, 2018 judgment entry regarding sanctions and attorney fees as the judgment appealed. Therefore, to the extent appellants attempt to appeal the merits of the probate court's determination on these issues, we lack jurisdiction to determine these matters in the present appeal.

{¶ 36} We additionally find appellants' reference to the judgment entry appealed from in the present case being "[v]oid [a]b [i]nitio" does not demonstrate error to support reversal. (Appellants' Brief at 21.) First, it is unclear how this argument supports each of the assignments of error, in violation of App.R. 12 and 16.

{¶ 37} Regardless, to the extent appellants make accusations of bias and misconduct against the probate court which pervade the entire case, such accusations are outside the record and reach beyond our jurisdiction.[5] Moreover, appellants provide, and we find, no authority for the proposition that errors in the removal, appointment, or denial of removal of a fiduciary to an estate cause subsequent judgment entries to be void. As such, appellants have not met their burden in demonstrating error on appeal in this regard. App.R. 16(A)(7); *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 38} Considering all the above, we find we lack jurisdiction to review the probate court's decisions on removing Ms. Cramer as administrator of the ancillary estate and denying Ms. Cramer's motion to remove appellee. Furthermore, to the extent appellants' brief on the first four assignments of error addresses the final, appealable order on which

---

[5] As stated in *DePalma* at ¶ 12, "this court is without jurisdiction to hear a complaint of judicial bias against a judge of the probate court." Thus, in *DePalma*, we found the appellant's arguments criticizing the probate court's treatment of her and leveling accusations of bias to be outside our jurisdiction and not indications the probate court abused its discretion in overruling a motion to remove an executor of an estate.

the present appeal is based, appellants have not met their burden of demonstrating error on appeal.

{¶ 39} Accordingly, we overrule appellants' first, second, third, and fourth assignments of error.

### B. Fifth and Sixth Assignments of Error

{¶ 40} Appellants' fifth and sixth assignments of error essentially challenge the trial court's confirmation of sale. In their fifth assignment of error, appellants assert the probate court erred by "permitting [appellee] to delay the administration by interfering with and breaching the contract the heirs had with their Columbus realtor and their sale of the house to an interested purchaser for $101,000, as well as [appellee's] and the Court's preventing the heirs from selling the house to a second buyer or purchasing it themselves." (Appellants' Brief at xii.) In their sixth assignment of error, appellants assert the probate court erred by confirming the sale of the real property to "[appellee's] straw purchaser for $32,000, (roughly one third of the $101,000 price the heirs had negotiated with their buyer and realtor.)." (Appellants' Brief at xii.)

{¶ 41} Specifically,[6] appellants argue Ohio law affords priority to the heirs of an estate to purchase the estate's real property, and appellee and the probate court obstructed appellants from either purchasing the home themselves or from selling the house to two buyers they located who were willing to pay more than triple the price of appellee's selling price. Appellants believe appellee should not have used the realtor he picked to sell the property and that doing so breached their agreement with another realtor. According to appellants, appellee should have used the county appraisal valuation used by Ms. Cramer when she was administrator instead of obtaining an appraisal, which she believes diminished the estate. Appellants challenge the appraiser's value and further asserts appellee's realtor lacked local experience, failed to effectively market the property, and admitted that his "first proposed sale" was to a "straw purchaser," which is contrary to Ohio law. (Appellants' Brief at 34.) Appellants take issue with appellee prohibiting appellants, their realtor, and their buyers from entering and inspecting the house, particularly to assess damage.

---

[6] As previously noted, appellants argue the first six assignments of error together; the arguments cited here are those responded to by appellee within the context of the fifth and sixth assignments of error.

{¶ 42} Appellee counters, prior to appellee being appointed, appellants clearly agreed they wanted the property to be sold, and, therefore, their current claim of being deprived of the right to their property is frivolous. Furthermore, appellee points out that after he was appointed, Ms. Cramer never requested permission from the probate court to list the property for sale and lacked authority to enter into a contract with a real estate broker; therefore, according to appellee, the estate could not be bound by the alleged contract referenced by appellants. Appellee notes the appraiser's testimony, particularly in regard to the high crime neighborhood and repairs needed to the property, supported his valuation. Appellee additionally noted Ms. Cramer admitted, given the current state of the property, a value of $30,000 was fair, and appellants did not present another appraisal showing the value should be higher. Appellee contends the estate had no funds to pay for repairs and taking the time to repair the property would delay administration of the estate. Appellee points out he requested information from Ms. Cramer regarding the potential $101,000 buyer, the probate court instructed Ms. Cramer "many times" to present all information regarding potential buyers to appellee, and appellants never presented the alleged offers. (Appellee's Brief at 36.) Appellee further argues the initial sale, which appellants contend was to a "straw purchaser," is no longer relevant as that sale was not completed, and, regardless, the sale complied with all laws. (Appellee's Brief at 39.)

{¶ 43} Generally, an order confirming a judicial sale of real property constitutes a final, appealable order where no other claims remain pending in the action. *Sky Fin. Group, Inc. v. Mogul*, 11th Dist. No. 2000-T-0038 (June 1, 2001) (addressing merits of probate court's order of sale under R.C. Chapter 2127); *Mandalaywala v. Zaleski*, 124 Ohio App.3d 321, 329 (10th Dist.1997) ("Ohio courts in general have held that orders confirming or refusing to confirm a judicial sale are appealable."); *Lucas v. Reywal Co., Ltd. Partnership*, 10th Dist. No. 17AP-479, 2019-Ohio-27, ¶ 16-17 (finding probate court order for the receiver to proceed with a purchase agreement for real property without Civ.R. 54(B) language to be a final, appealable order where it appeared that all other claims, rights, and liabilities of all the parties had been resolved). *See also Whipps v. Ryan*, 10th Dist. No. 12AP-509, 2013-Ohio-4334, ¶ 27 (finding, in a foreclosure action, the confirmation of the sheriff's sale to be a final, appealable order).

{¶ 44} Here, appellants did not appeal the July 24, 2017 decision of the probate court overruling appellants' objections, adopting the magistrate's order to confirm the new sale and ordering deed and distribution, and denying appellants' motion to stay. Therefore, to the extent appellants seek to challenge the confirmation of the sale, we lack jurisdiction over those matters.

{¶ 45} As was discussed in relation to the first four assignments of error, appellants' reference to the judgment entry appealed from in the present case being "[v]oid [a]b [i]nitio" does not support reversal. (Appellants' Brief at 21.) Appellants provide, and we find, no authority for the proposition that a judgment entry on sanctions and attorney fees is void due to alleged errors in an un-appealed confirmation of a land sale. We further note the errors alleged by appellants run contrary to the record of the case: appellants admitted they wanted to sell the property, appellants did not appeal the probate court's denial of their motion to remove appellee, and appellants did not provide the probate court with information regarding the alleged offers they secured to buy the property for more money. As a result, appellants have not met their burden in demonstrating error on appeal in this regard. App.R. 16(A)(7); *Sims* at ¶ 11; *Smith* at ¶ 22.

{¶ 46} Considering all the above, we find we lack jurisdiction to review the probate court's decision to confirm sale and order deed and distribution in this case. Furthermore, to the extent appellants' fifth and sixth assignments of error address the final, appealable order on which the present appeal is based, appellants have not met their burden of demonstrating error on appeal.

{¶ 47} Accordingly, we overrule appellants' fifth and sixth assignments of error.

**C. Seventh and Eighth Assignments of Error**

{¶ 48} Appellants' seventh and eighth assignments of error contend certain aspects of the trial court's findings on appellee's attorney fees constitutes error. For the following reasons, we disagree.

{¶ 49} R.C. Chapter 2129 directs a sale of real property in an ancillary estate to proceed in the same manner as a sale of real property in administration proceedings relating to the estates of resident decedents under R.C. 2127.01 to 2127.43. R.C. 2129.13 and 2129.14. Pursuant to R.C. 2127.38, "reasonable" attorney fees performed "in

connection with the sale" are recoverable following the land sale and are paid prior to any liens on the real property sold.  R.C. 2127.38(A).

{¶ 50} In *Law Offices of Russell A. Kelm v. Selby*, 10th Dist. No. 15AP-1135, 2017-Ohio-8239, ¶ 29, we explained:

> When ruling on a request for attorney fees, the trial court must determine the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. [*Wells Fargo Bank, N.A. v.*] *Odita*, [10th Dist. No. 13AP-663, 2014-Ohio-2540,] ¶ 23, citing *Sims v. Nissan N. Am., Inc.*, 10th Dist. No. 12AP-833, 2013-Ohio-2662, ¶ 46, citing *Bittner* [*v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143,] 145, [(1991)].  The trial court may modify the calculation in accordance with the factors set forth in Prof.Cond.R. 1.5(a),[7] which are to be considered in determining the reasonableness of attorney fees.  *Odita* at ¶ 23, citing *Sims* at ¶ 47.  The party seeking an award of attorney fees bears the burden of proving the reasonableness of the fees sought.  An award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination.  *Id.*

{¶ 51} A probate court's determination of the amount of attorney fees is reviewed for abuse of discretion.  *In re Estate of Born*, 10th Dist. No. 06AP-1119, 2007-Ohio-5006, ¶ 14; *Law Offices of Russell A. Kelm* at ¶ 29.  The term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  In the context of reviewing a trial court's determination of the amount of attorney fees, " '[u]nless the amount of [attorney] fees is so high or so low as to shock the conscience, an appellate court will not interfere.' "  *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. No. 13AP-663, 2014-Ohio-2540, ¶ 22, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991).  Where a question of law is raised, it is reviewed

---

[7] Prof.Cond.R. 1.5(a) provides: "A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee.  A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.  The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent."

de novo on appeal. *Law Offices of Russell A. Kelm* at ¶ 21; *Gehlmann v. Gehlmann*, 9th Dist. No. 13CA0015-M, 2014-Ohio-4990, ¶ 6.

{¶ 52} In this case, the probate court thoroughly reviewed appellee's submitted attorney fees, considered Prof.Cond.R. 1.5(a), and substantially reduced the allowed fees due to double-billing. The probate court decision states Ms. Cramer did not present any new evidence but continued to argue the property could be sold for a higher amount. It also notes appellee did not request a fiduciary fee for his work in addition to his attorney fees "despite the highly unusual and protracted nature of this land sale action." (Mar. 22, 2018 Jgmt. Entry at 8.)

{¶ 53} Appellants specifically challenge the probate court decision in finding appellee's requested fees appropriate and necessary and "blindly accepting [appellee's] bills, despite his failure to present any expert testimony, affidavits, or any other evidence in support of his invoices, under the lodestar or any other standard, to prove the reasonableness of his hourly rates, * * * hours claimed, necessity of the work performed, and other burdens he bears under Loc.R. 71.7 and all of the case law." (Appellants' Brief at xii-xiii.) Appellants' eighth assignment of error further contends the probate court erred by approving appellee's fees charging the estate for "multiple, substantive ex parte contacts with the court." (Appellants' Brief at xiii.)

{¶ 54} Appellee emphasizes the land sale proceeding underlying this appeal has separate rules regarding payment of attorney fees than those estate administration rules cited by appellants, and the fees requested in these proceedings were reasonable under Prof.Cond.R. 1.5(a). Appellee argues he was required to initiate the land sale action to sell the property, and, therefore, he did not pursue unnecessary litigation as appellants contend. He asserts he expended a considerable amount of time on the land sale proceeding due to Ms. Cramer's actions and frivolous and inflammatory allegations. Appellee contends the hourly rate of his certified legal assistant is warranted given her specialized and lengthy experience in this area of law, and no improper ex parte communications took place. Appellee additionally argues that under *In re Estate of Love*,

1 Ohio App.3d 571 (10th Dist.1965),[8] a probate court judge is qualified to make a determination of reasonable attorney fees without the necessity of expert testimony.

{¶ 55} As an initial matter, appellants do not support their assignment of error with any legal authority. "The burden of affirmatively demonstrating error on appeal rests with the [appellant]." *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; *see also* App.R. 9 and 16(A)(7). Pursuant to App.R. 16(A)(7), "[t]he appellant shall include in its brief, under the headings and in the order indicated, all the following: * * * (7) [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies.*" (Emphasis added.) "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *Abraham v. BP Exploration & Oil, Inc.*, 10th Dist. No. 01AP-1061, 2002-Ohio-4392, ¶ 32. Because appellants fail to provide legal authority in support of their assignments of error, they have not demonstrated error on appeal.

{¶ 56} Moreover, the record of appeal does not include the transcript of the February 16, 2018 hearing on the award of attorney fees and costs. An appellant bears the burden of providing the record for appellate review, including any transcript needed to review the assignments of error. App.R. 9; *Schroeder v. Watson*, 10th Dist. No. 13AP-537, 2014-Ohio-711, ¶ 16, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) ("The duty to provide a transcript for appellate review falls upon the appellant."); *State v. Williams*, 73 Ohio St.3d 153, 160 (1995).

{¶ 57} As a result of not having the transcript to the hearing, we do not know whether issues related to the necessity and reasonableness of the attorney fees or improper billing raised in these two assignments of error were preserved for appeal through objections at the hearing. Furthermore, considering the nature of the claims in the assignments of error, without a transcript we are unable to fully assess appellants' assignments of error. *Bahgat v. Kissling*, 10th Dist. No. 17AP-641, 2018-Ohio-2317, ¶ 21, quoting *Bayview Loan Servicing, L.L.C. v. Likely*, 9th Dist. No. 28466, 2017-Ohio-7693,

---

[8] The holding in *In re Estate of Love* was more recently affirmed in *In re Estate of Born* at ¶ 21, and *In re Guardianship of Schwarzbach*, 10th Dist. No. 17AP-247, 2018-Ohio-1712, ¶ 35.

¶ 12 ("Without a transcript, an appellant cannot demonstrate error with respect to factual findings, and thus, the appellate court must presume the regularity of the proceedings and that the facts were correctly interpreted."). *See also Harrison v. Harrison*, 10th Dist. No. 98AP-560 (Apr. 15, 1999) (reviewing transcript of hearing to determine whether trial court abused its discretion in ordering appellant to pay attorney fees). Considering all the above, we find appellants have not met their burden of demonstrating appeal.

{¶ 58} Accordingly, appellants' seventh and eighth assignments of error are overruled.

### D.  Ninth and Tenth Assignments of Error

{¶ 59} In their ninth and tenth assignments of error, appellants challenge certain aspects of the probate court's decision finding Ms. Cramer willfully violated Civ.R. 11 and R.C. 2323.51 and sanctioning Ms. Cramer by assessing attorney fees and costs against her. For the following reasons, we disagree with appellants.

{¶ 60} "Civ.R. 11 requires an attorney or a pro se litigant to sign every pleading, motion or other document." *Neubauer v. Ohio Remcon, Inc.*, 10th Dist. No. 05AP-946, 2006-Ohio-1481, ¶ 28-31. The rule provides in pertinent part:

> The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted.

Civ.R. 11.

{¶ 61} "In adjudicating a motion for sanctions under Civ.R. 11, a trial court must consider whether the individual signing the document: (1) has read the pleading; (2) has good grounds to support it to the best of his or her knowledge, information, and belief; and (3) did not file it for purposes of delay." *Id.* at ¶ 29. "If the trial court determines that the filing did not meet one or more of these requirements, then the court must determine whether the violation was willful. * * * [M]ere negligence is insufficient." *Id.*

{¶ 62} In contrast, per R.C. 2323.51, a trial court may award court costs, reasonable attorney fees, and other reasonable expenses incurred due to "frivolous conduct." Under R.C. 2323.51(A)(2)(a), "[f]rivolous conduct" means:

> Conduct of [a] * * * party to a civil action, * * * or other party's counsel of record that satisfies any of the following:
>
> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 63} "Conduct" means "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1).

{¶ 64} Here, in their ninth assignment of error, appellants specifically contend the probate court erred by finding appellants "willfully filed 'numerous motions' with intent to harass and maliciously injure [appellee] and delay the administration of the estate." (Appellants' Brief at xiii.) Appellants' tenth assignment of error similarly asserts the probate court "disregard[ed] the nature and substance of [appellants'] filings, as well as the limited number of their filings," while adding the probate court essentially ignored the length and depth of experience held by Ms. Cramer and the former attorney to Ms. Chaplin.

(Appellants' Brief at xiii.)   In arguing these assignments of error together, appellants essentially contend the imposition of sanctions was unwarranted because, by appellants' count, Ms. Cramer only made two scheduling requests, filed only one substantive motion, and made objections to the magistrate's decisions, and otherwise was responding to appellee's filings. Appellants argue Ms. Cramer filed "[m]eritorious" documents as permitted by the rules and "to [o]bject to [appellee's] [c]onversion of the [e]ntirety of the [e]state to [h]is [p]ersonal [f]inancial [b]enefit."  (Appellants' Brief at 37, 38.)  Appellants lastly argue that under *Newman v. Al Castucii Ford Sales, Inc.*, 54 Ohio App.3d 166, 170 (1st Dist.1988), it was improper for the probate court to include the time spent on the sanctions motion itself in the amount of sanctions.

{¶ 65} Appellee argues that contrary to appellants' assignments of error, the sanctionable conduct here is not just the number of motions filed but concerns the frivolous nature of what Ms. Cramer said in her filings and her overall conduct.  Appellee notes *Newman* was later rejected by the Supreme Court in *Ron Scheiderer & Assocs. v. London*, 81 Ohio St.3d 94, 98 (1998), and this court has subsequently followed *London*.[9]

{¶ 66} The trial court in this case determined Ms. Cramer violated Civ.R. 11 when she drafted, read, and signed numerous baseless pleadings and other documents, which lacked ground to support the allegations made and which were for purpose of delay.  It likewise determined Ms. Cramer willfully violated R.C. 2323.51 when she conducted herself in a manner meant to harass and intimidate appellee and where Ms. Cramer's conduct was not warranted under existing law and cannot be supported by good faith arguments, consisted of supposition and innuendo without evidentiary support and caused unnecessary delay and increased cost of the litigation.

{¶ 67} Our review of the record confirms the trial court's findings regarding Ms. Cramer's filings and conduct.  However, the record on appeal does not include a transcript of the October 27, 2017 hearing, on which both the probate court decision and appellants' brief is based.  As previously stated, an appellant bears the burden of providing the record for appellate review, including any transcript needed to review the assignments of error,

---

[9] *See, e,g, Crooks v. Consol. Stores Corp.*, 10th Dist. No. 98AP-83 (Feb. 4, 1999); *Gianetti v. Teakwood, Ltd.*, 10th Dist. No. 17AP-606, 2018-Ohio-1621, ¶ 16.

and supplementing the record as necessary. App.R. 9; *Schroeder*, 2014-Ohio-711 at ¶ 16; *Knapp*, 61 Ohio St.2d at 199; *Williams*, 73 Ohio St.3d at 160.

{¶ 68} As a result, because review of the ninth and tenth assignments of error is predicated, at least in part, on the hearing on sanctions, without the transcript we are unable to fully assess the trial court's decision to find Ms. Cramer willfully violated Civ.R. 11 and R.C. 2323.51. *Bahgat*, 2018-Ohio-2317 at ¶ 37 (overruling assignment of error based on factual matters pertaining to the finding of frivolous conduct because, without a transcript, we were unable to conduct a complete review of the merits); *Knapp* at 199 ("When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.").

{¶ 69} Considering all the above, appellants have not demonstrated the probate court erred in finding Ms. Cramer willfully violated Civ.R. 11 and R.C. 2323.51 on this record.

{¶ 70} Accordingly, appellants' ninth and tenth assignments of error are overruled.

### E. Eleventh Assignment of Error

{¶ 71} In their eleventh assignment of error, appellants contend the probate court erred "by holding in abeyance and failing to dismiss, with prejudice, [appellee's] frivolous spin-off Case No. 567794B, for lack of subject matter jurisdiction, failure to state a claim, and lack of personal jurisdiction over heir and attorney for the heirs Marilyn A. Cramer. * * * The Complaint relies upon O.R.C. §2323.51, which expressly does not apply to Attorney Cramer, who represents her client, Heir Ms. Carrie Chaplin, and [appellee] failed to file the Complaint in the proper court of common pleas." (Emphasis omitted.) (Appellants' Brief at xiv.)

{¶ 72} In this assignment of error, appellants reference Franklin P.C. No. 567794B, which concerns appellee's complaint to declare appellee a vexatious litigator. Appellants essentially request we determine, in case No. 567794B, whether appellee stated a claim and whether the probate court lacks subject-matter jurisdiction over the vexatious litigator case and/or personal jurisdiction over Ms. Cramer. Appellee argues appellants did not designate any judgment, order, or decree for review from case No. 567794B in their notice

of appeal and notes they could not have done so anyway since no final, appealable order has been issued in that case.

{¶ 73} A complaint to declare a person to be a vexatious litigator under R.C. 2323.52 constitutes a civil action separate from the underlying case on which it is based.[10] *Whipps*, 2013-Ohio-2772 at ¶ 17-22; *Kinstle v. Union Cty. Sheriff's Office*, 3d Dist. No. 14-07-16, 2007-Ohio-6024, ¶ 11; *Helfrich v. Madison*, 5th Dist. No. 2011-CA-89, 2012-Ohio-3701, ¶ 52. While the instant notice of appeal references case No. 567794B in the caption, it specifically designates the order appealed from as the March 22, 2018 judgment entry in case No. 567794A, the land sale case.

{¶ 74} The purview of an appellate court is to "review and affirm, modify, or reverse *the judgment or final order appealed*." (Emphasis added.) App.R. 12(A)(1)(a). *See also Cook v. Smith*, 10th Dist. No. 12AP-489, 2012-Ohio-4951, ¶ 14 ("This court has jurisdiction only to consider appeals from final, appealable orders."). This assignment of error invokes our review of issues arising from a separate civil action and does so without designating a final, appealable order in that case. As such, we find we lack jurisdiction to review appellants' eleventh assignment of error.

{¶ 75} Accordingly, we dismiss appellants' eleventh assignment of error. *In re Estate of Robison*, 10th Dist. No. 17AP-232, 2017-Ohio-8980, ¶ 26 (dismissing certain assignments of error due to lack of a final, appealable order).

### F. Twelfth Assignment of Error

{¶ 76} In their twelfth assignment of error, appellants argue the probate court erred in approving nearly all of appellee's alleged fees and costs accrued in filing his vexatious litigator lawsuit against Ms. Cramer in case No. 567794B when the complaint was improperly filed for a number of reasons in Ms. Cramer's opinion, including the vexatious litigator statue not applying to her, the probate court's lack of subject-matter and personal jurisdiction, because it was a "second and improper complaint" under Civ.R. 7(A), and because it was filed as "a retaliatory attempt to prevent the heirs from asserting the heirs' constitutional and statutory rights to estate property." (Appellants' Brief at xiv, 59.)

---

[10] An order determining the merits of a vexatious litigator action is a final, appealable order. *Whipps v. Ryan*, 10th Dist. No. 12AP-685, 2013-Ohio-4382, ¶ 16.

{¶ 77} A decision to impose sanctions and the amount of the award, pursuant to Civ.R. 11 and/or R.C. 2323.51, lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Neubauer*, 2006-Ohio-1481 at ¶ 31 (holding the trial court did not abuse its discretion in awarding fees associated with the appellee's counterclaim); *State ex rel. Davis v. Metzger*, 145 Ohio St.3d 405, 2016-Ohio-1026, ¶ 10.

{¶ 78} The issue relevant to the order appealed presently is whether the trial court erred in approving attorney fees for appellee's time on the vexatious litigator proceeding. As previously discussed, the record of appeal does not include the transcript of the hearing on attorney fees. As such, we do not know if this issue was preserved for appeal and are hindered in our review of the decision on imposition of sanctions generally.

{¶ 79} Moreover, appellants' assignment of error incorporates, and their brief singularly argues, the merits of the alleged impropriety of appellee bringing the vexatious litigator case in the first place. As we provided in the eleventh assignment of error, this court lacks jurisdiction to review issues concerning Franklin P.C. No. 567794B without a final, appealable order in that separate case. Appellants provide no argument or legal authority regarding whether the probate court's imposition of attorney fees arising out of appellee's work on his vexatious litigator claim was appropriate. As such, appellants have not met their burden to affirmatively demonstrate error on appeal. *Watkins v. Holderman*, 10th Dist. No. 11AP-491, 2012-Ohio-1707, ¶ 11; *see also* App.R 16(A).

{¶ 80} Accordingly, appellants' twelfth assignment of error is overruled.

## IV. CONCLUSION

{¶ 81} Having overruled appellants' first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and twelfth assignments of error and having dismissed appellants' eleventh assignment of error, we affirm the March 22, 2018 judgment entry of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____