[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Cramer*, **Slip Opinion No. 2020-Ohio-4195.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4195

DISCIPLINARY COUNSEL *v.* CRAMER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Cramer*, Slip Opinion No. 2020-Ohio-4195.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including engaging in conduct that adversely reflects on the lawyer's fitness to practice law—Indefinite suspension.*

(No. 2019-1739—Submitted April 8, 2020—Decided August 27, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-038.

_____

**Per Curiam.**

{¶ 1} Respondent, Marilyn Abrienne Cramer, of Cleveland, Ohio, Attorney Registration No. 0032947, was admitted to the practice of law in Ohio in 1977.

{¶ 2} In a July 3, 2018 complaint, relator, disciplinary counsel, alleged that Cramer's conduct with respect to the ancillary administration of her mother's

probate estate in Franklin County violated the Rules of Professional Conduct. Specifically, the complaint alleged that Cramer (1) knowingly or recklessly made false statements concerning the integrity of judicial officers, (2) knowingly made false statements of fact or law to a tribunal, (3) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, (4) filed frivolous pleadings, (5) engaged in conduct that was prejudicial to the administration of justice, and (6) engaged in conduct that adversely reflects on her fitness to practice law.

{¶ 3} Following a two-day hearing, a panel of the Board of Professional Conduct issued a report finding that Cramer committed all the charged misconduct and recommending that she be indefinitely suspended from the practice of law, with certain conditions on her reinstatement to the profession. The board adopted the findings of fact, conclusions of law, and recommendation of the hearing panel. Cramer has filed 28 objections to the board's findings of fact, conclusions of law, and recommended sanction and asks this court to dismiss relator's complaint. Based on our review of the record, we overrule each of Cramer's objections and adopt the board's findings of misconduct and recommended sanction.

## Background

{¶ 4} A brief summary of the underlying probate litigation in this case is necessary to understand the nature of Cramer's misconduct.

{¶ 5} Cramer's mother, Selena Cramer, died in Alabama on September 28, 2007, and was survived by four heirs—Cramer and her siblings, Callie Lipka, Myron Cramer ("Myron"), and Carrie Chaplin. In November 2014, Lipka opened an estate in Limestone County, Alabama, but did not identify Cramer as one of Selena's surviving children. Lipka also retained an attorney to file an application for ancillary administration in Franklin County, Ohio, hired a realtor to dispose of a house that Selena owned in Columbus at the time of her death, and placed the house on the market. Three days before the hearing on that application, Cramer

filed in Franklin County a competing application for authority to administer Selena's entire estate, along with a sworn declaration making numerous disparaging comments about Lipka and Myron. Thereafter, Lipka's counsel withdrew his application, citing the family's disagreement regarding how to proceed.

{¶ 6} On September 29, 2014, the probate-court magistrate ordered Cramer to file an amended application to be appointed as the ancillary administrator and stated that upon filing of the appropriate documents and bond, Cramer would receive the appointment. The magistrate advised the parties that the ancillary administrator would have to work for the common benefit of all beneficiaries and that the failure to do so would result in the ancillary administrator's removal and the appointment of an independent administrator. The magistrate stated that she would not entertain any arguments regarding the validity of the Alabama administration because there was no allegation that Selena was a resident of Franklin County at the time of her death. Following that hearing, Cramer fired Lipka's realtor and took the house off of the market. On November 28, 2014, Cramer filed the necessary documents and bond and was appointed as the ancillary administrator to dispose of the Franklin County real estate.

{¶ 7} Myron and Lipka retained another attorney to represent them in the Franklin County proceedings. In April 2015, they moved for removal of Cramer as the ancillary administrator on the grounds that she had failed to fulfill her duties, in part by failing to relist the real property for sale. At a June 2015 hearing, the heirs—including Cramer—agreed to sell the property, pay the expenses of administration, and surrender the remaining proceeds to the Alabama estate.

{¶ 8} On July 17, 2015, the magistrate issued a decision recommending that Cramer be removed as the ancillary administrator based on findings that she

had failed to list the property for sale and that the resulting delay in the administration of the estate and personal issues among the heirs required her removal. *See* R.C. 2109.24. On December 23, 2015, the court adopted the magistrate's decision over Cramer's objections.

{¶ 9} In January 2016, the probate court appointed attorney Thomas Taneff to serve as the successor ancillary administrator. Taneff filed a civil complaint to sell the real estate in a separate but related proceeding. Cramer opposed Taneff's actions at every turn and unsuccessfully attempted to remove him from his role as fiduciary of the estate.

{¶ 10} At some point during Taneff's administration, the property was vandalized, and Taneff received an insurance settlement of $43,500 on behalf of the estate. The property was eventually appraised at $30,000, and in July 2017, the court approved the sale of the property for $39,000 over Cramer's repeated objections.

{¶ 11} In a December 19, 2017 judgment entry, the probate court found that Cramer willfully violated Civ.R. 11 by drafting and signing numerous documents and pleadings that lacked grounds to support the allegations made. The court also found that Cramer willfully violated R.C. 2323.51 by conducting herself in a manner intended to harass and intimidate Taneff, who was a party to the action, and engaging in conduct that was not warranted under existing law and could not be supported by good-faith arguments. The court further determined that Cramer's conduct was improper, had caused unnecessary delay, and had needlessly increased the costs of litigation. On March 22, 2018, the court ordered Cramer to pay Taneff $22,256.65, representing the attorney fees and costs he had incurred as the result of her conduct.

{¶ 12} With this backdrop, we proceed to the board's findings of fact and misconduct.

**Misconduct**

{¶ 13} Relator charged Cramer with seven rule violations arising from her conduct in the ancillary administration of her mother's estate. For ease of discussion, the board divided those charges into three separate counts.

*Count One: False Statements Concerning the Integrity of a Judicial Officer*

{¶ 14} Relator first alleged that Cramer violated Prof.Cond.R. 8.2(a) (prohibiting a lawyer from knowingly or recklessly making false statements concerning the integrity of a judicial officer) by making numerous disparaging statements about the integrity of the probate court, repeatedly alleging that the court had engaged in improper ex parte communications and had appointed Taneff for political reasons.

{¶ 15} Because lawyers " 'possess, and are perceived by the public as possessing, special knowledge of the workings of the judicial branch of government,' " we have recognized that "[their] statements made during court proceedings are 'likely to be received as especially authoritative.' " *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 22, quoting *State ex rel. Oklahoma Bar Assn. v. Porter*, 766 P.2d 958, 969 (Okla.1988), and *Gentile v. Nevada State Bar*, 501 U.S. 1030, 1074, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). In *Gardner*, we adopted an objective standard to determine whether a lawyer's statements about a judicial officer were made with knowledge or reckless disregard of their falsity: We look to the nature of the statements and the context in which they were made and consider what a reasonable attorney, in light of all his professional functions, would do in the same or similar circumstances. *Id.* at ¶ 26. Applying that standard, we held that "an attorney may be sanctioned for making accusations of judicial impropriety that a reasonable attorney would believe are false." *Id.* at ¶ 31.

{¶ 16} In Cramer's objections to the magistrate's 2015 decision recommending that she be removed as the ancillary administrator, Cramer

referred to the removal hearing as a "pseudo-hearing" and a "charade"—largely because the magistrate had refused to consider arguments related to the Alabama probate proceedings. Cramer also alleged that the magistrate had deprived her of her rights to fundamental fairness and an unbiased hearing, followed the law "only reluctantly," engaged in "fundamentally unfair procedures" by distorting the truth and concealing evidence to arrive at "predetermined conclusions," and removed her as the fiduciary to avoid work.

{¶ 17} In addition, Cramer accused the magistrate of engaging in improper ex parte communications with the attorneys representing Lipka and Myron. In support, she stated that she had observed the magistrate speak to one of those attorneys before a hearing and she cited the alleged statement of a court employee, but neither allegation identified the substance of the alleged conversations. In its decision overruling Cramer's objections and removing her as the fiduciary, however, the court addressed Cramer's attacks on the magistrate and found the magistrate's conduct to be proper.

{¶ 18} In Cramer's answer to Taneff's complaint in the real-estate proceeding, she claimed that Taneff's appointment as the successor ancillary administrator was illegal and appeared to have been "politically motivated." Cramer claimed that she had arranged for the court's appraiser to enter and inspect the real property after Taneff had failed to do so. She also continued to attack Lipka and Myron and argued that they had acted unlawfully in the Alabama proceedings.

{¶ 19} In her response to Taneff's motion to strike her answer to the complaint, Cramer alleged that the clerk's office had engaged in "particularly suspicious and troubling" handling of her answer and had failed to timely file it despite its timely submission. The magistrate subsequently issued an order deeming Cramer's answer to be timely filed but explaining why Cramer's allegations of misconduct by the clerk were "unfounded and spurious."

6

{¶ 20} In November 2016, Cramer arrived late for a scheduled hearing. During the hearing, Cramer continued to allege that the court had engaged in improper ex parte communications with Taneff and other attorneys involved in the case. On cross-examination, Taneff explained that he had contacted the court for the purposes of scheduling hearings and locating documents. Taneff expressly denied that the contacts with the court were substantive in nature. Cramer declined the court's invitation to present evidence to support her allegations that the court had engaged in ex parte communications with other attorneys.

{¶ 21} After the magistrate issued a decision confirming the sale of the real property in November 2016, Cramer filed objections and numerous motions. In these filings, she continued to make disparaging comments about the court and Taneff. Among other things, she alleged that Taneff's prior service as the finance chair of the judge's political campaign, combined with his monetary contributions to various other (unidentified) political campaigns, "create insurmountable ethical issues, rendering it inadvisable for the Court to entertain his motions attacking the heirs."[1] In early 2017, the chief justice assigned a visiting judge to preside over the probate proceedings.

{¶ 22} In her answer to the disciplinary charges brought against her, Cramer continued to impugn the integrity of the magistrate and the court and commenced an attack on disciplinary counsel. She renewed her allegations that the magistrate and opposing counsel had engaged in impermissible ex parte communications and had "schemed" to remove her as the fiduciary of the ancillary estate, and she repeatedly alleged that the magistrate and the judge were

---

1. We note that although Jud.Cond.R. 2.13(A) requires a judge to exercise the power of appointment impartially and on the basis of merit and to avoid nepotism, favoritism, and unnecessary appointments, it does not expressly prohibit the appointment of persons affiliated with a judge's campaign. Moreover, Loc.R. 8.1 of the Court of Common Pleas of Franklin County, Probate Division, provides that "[p]ersons appointed by the court to serve as * * * fiduciaries * * * shall be selected from lists maintained by the court" and requires the court to review those lists periodically to ensure the equitable distribution of those appointments.

corrupt. She also claimed that assistant disciplinary counsel had "deliberately prepared a dishonest complaint or [was] incompetent to perform his job" and had engaged in misconduct for the purpose of covering up the probate court's actions by "setting up and framing [Cramer]." Moreover, she denied that any of her statements were improper, because the magistrate and the probate judge "ha[d] shown, repeatedly, that they have no integrity," and she asserted that the "insults and threats in [the court's] order [are] far more intemperate and offensive than anything she wrote in protest of th[e] corruption."

{¶ 23} Although Cramer was given multiple opportunities during her disciplinary hearing to submit evidence or otherwise explain the basis for her accusations, she adamantly maintained her position that she was the victim of a corrupt court. Her primary defense was that but for collusion on the part of the court, she could not have been removed as the ancillary administrator and the court could not have made its subsequent orders. Cramer showed no remorse for her misconduct. The board found that relator had established by clear and convincing evidence that Cramer violated Prof.Cond.R. 8.2(a).

{¶ 24} Cramer raises seven objections regarding the board's findings with respect to this count. She claims that several of the board's factual findings are false, and she argues that the board's determination that she violated Prof.Cond.R. 8.2(a) is not supported by the evidence.

{¶ 25} After independently reviewing the record and verifying that the record contains clear and convincing evidence to support the board's factual findings summarized above, we find that Cramer repeatedly made numerous accusations of judicial impropriety that a reasonable attorney would believe are false. For example, we have held that it is not reasonable for an attorney to allege that a judge has engaged in ex parte communications based solely on the attorney's observation of a judge entering his or her chambers with counsel for one party, coupled with the attorney's speculation about the content of the

communication. *See Disciplinary Counsel v. Pullins*, 127 Ohio St.3d 436, 2010-Ohio-6241, 940 N.E.2d 952, ¶ 53.

{¶ 26} We therefore overrule Cramer's first, fourth, fifth, 13th, 18th, 19th, and 20th objections to the board's findings of fact, and we find that Cramer violated Prof.Cond.R. 8.2(a).

*Count Two: Dishonest Conduct and Making False Statements to a Tribunal*

{¶ 27} Next, the board considered relator's allegations that Cramer (1) misrepresented her authority as the ancillary administrator *before* her appointment, (2) gave false testimony regarding her forcible entry onto the real property after her authority was revoked, and (3) gave false testimony about the existence of a buyer who was purportedly willing to purchase the real property for $101,000.

{¶ 28} Regarding the first allegation, in a September 29, 2014 order, the magistrate specifically cautioned that she would not appoint Cramer as the ancillary administrator unless and until she filed the appropriate documents and bond. Cramer filed the required documents and bond and was appointed as the ancillary administrator on November 28, 2014. But in October 2014, Cramer contacted the realtor Lipka had hired to sell the Ohio real property. Cramer told the realtor that she had been appointed the ancillary administrator and that she had removed the realtor's sign from the yard. She demanded that the realtor immediately withdraw the property from the market and provide copies of the realtor's correspondence with Lipka and Myron, and she threatened the realtor with legal process if she did not respond to Cramer's demand.

{¶ 29} With respect to relator's second allegation, at the probate court's October 27, 2017 hearing on a motion for sanctions against Cramer, Cramer testified that after Taneff was appointed as the ancillary administrator, off-duty police officer Patrick Lavender helped her forcibly enter the real property with a crowbar. In an affidavit submitted to the probate court—and again in his

testimony before the disciplinary panel—however, Lavender adamantly denied that he assisted Cramer in the forcible entry of the property. He explained that although he had helped Cramer secure the property while she was serving as the ancillary administrator, he knew that something was wrong when he noticed different locks on the door after the court had revoked Cramer's authority. He therefore refused to help her forcibly enter the property. At her disciplinary hearing, Cramer reaffirmed that Lavender had aided her forcible entry of the property and further alleged that Taneff had pressured Lavender into giving false testimony.

{¶ 30} Finally, throughout the probate proceedings, Cramer repeatedly represented to the court that she had two buyers who were willing to purchase the Ohio property for $101,000. In its December 19, 2017 judgment entry finding that Cramer willfully violated Civ.R. 11 and R.C. 2323.51, the probate court made the following finding:

> Marilyn Cramer never submitted the mystery $101,000.00+ offer to Mr. Taneff, and during the October 27, 2017 hearing, Marilyn Cramer testified that she did not send the mystery offer to Mr. Taneff's office. For Marilyn Cramer to claim Mr. Taneff is negligent for not acting on an offer to purchase real estate which she repeatedly failed to submit is duplicitous.

{¶ 31} At her disciplinary hearing, Cramer called at least two witnesses in an effort to establish that the prospective buyers were willing to pay far more than Taneff obtained for the real property, but the board found that their testimony did not support that proffer.

{¶ 32} On these facts, the board found that Cramer violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact

or law to a tribunal) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 33} The board also noted that Cramer had submitted an affidavit from one of the alleged prospective buyers in the underlying probate proceeding but found that his testimony at the disciplinary hearing demonstrated that he had no personal knowledge of the facts contained in that affidavit. Having weighed the credibility of that witness and of Cramer, the panel determined that Cramer had drafted the affidavit and submitted it to the probate court and the panel, knowing that it was false.

{¶ 34} Cramer raises six objections to the board's factual findings with respect to this count. As three of those objections, she claims that she did not misrepresent her authority before becoming the ancillary administrator, that she did not falsely claim to have a buyer willing to pay between double and triple the price that Taneff obtained for the property, and that she did not draft a false affidavit.

{¶ 35} Our review of the record shows that the challenged findings of the board in this regard are amply supported by the evidence. The parties submitted as a joint exhibit a copy of an October 22, 2014 letter to the realtor in which Cramer represented that she had been appointed the administrator of all the estate's assets in Franklin County—five weeks before she was actually appointed to that role. It is true that Cramer presented testimony regarding two people who had, at various times, *expressed interest* in purchasing the property for approximately $100,000, but the record shows that neither of the potential buyers ever made a written offer to purchase the property. And although one of the potential buyers testified that he needed to assess the condition of the house in person before making an offer, he admitted that he never contacted Taneff or the realtor to inquire about viewing the property. Instead, he relied on Cramer's

representations that Taneff would not respond to her requests about gaining access to the property.

{¶ 36} As her three remaining objections to the board's findings regarding Count Two, Cramer asserts that Lavender gave false testimony regarding his participation in the forcible entry of the property and that in any event, as an heir with an equitable interest in the real property, Cramer's forcible entry could not constitute a trespass—though she offers no legal authority to support that position. Because the hearing panel has the opportunity to observe the witnesses firsthand, we typically defer to its credibility determinations unless the record weighs heavily against those findings. *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8, citing *Cleveland Bar Assn. v. Cleary*, 93 Ohio St.3d 191, 198, 754 N.E.2d 235 (2001). Here, the record supports the panel's determination that Lavender's testimony was more credible than Cramer's.

{¶ 37} For these reasons, we overrule Cramer's third, seventh, eighth, and ninth objections to the board's factual findings and her second objection to the board's conclusions of law, and we adopt the board's findings that Cramer violated Prof.Cond.R. 3.3(a)(1) and 8.4(c).

*Count Three: Conduct that is Unsupported by the Law, that is Prejudicial to the Administration of Justice, and that Adversely Reflects on the Attorney's Fitness to Practice Law*

{¶ 38} The last three allegations of misconduct against Cramer are that she engaged in frivolous conduct that prejudiced the administration of justice and adversely reflects on her fitness to practice law by acting outside the scope of her authority, obstructing the successor ancillary administrator's ability to sell the real property, and threatening parties and witnesses in the ancillary probate proceedings.

{¶ 39} In support of these allegations, the board noted that in the 32-page judgment entry issued on December 19, 2017, the probate court found that Cramer willfully violated Civ.R. 11 and R.C. 2323.51 and later ordered her to pay Taneff $22,256.65 in fees and costs that it found to be directly attributable to her frivolous conduct. The court found that Cramer had filed numerous pleadings and other documents containing "scandalous, insulting, and groundless allegations" against the court and had filed actions raising issues that either were not before the court or had already been decided—all for the purpose of delay. In addition, the court found that Cramer had conducted herself in a manner meant to harass and intimidate Taneff with supposition and innuendo that had no evidentiary support. Moreover, the court noted that "Cramer failed to grasp the reality that when she was removed as the ancillary administrator, she lost the ability to dictate the terms of sale of the real estate" and that "[her] bad conduct and frivolous filings turned what should have been a simple land sale into a circus devoid of any respect to the court and its officers." On appeal, the Tenth District Court of Appeals affirmed the probate court's judgment, overruling 11 of Cramer's assignments of error and dismissing a 12th. *Taneff v. Lipka*, 2019-Ohio-887, 124 N.E.3d 859 (10th Dist.).

{¶ 40} Based on the probate court's findings, the board found that Cramer violated Prof.Cond.R. 3.1 (prohibiting a lawyer from bringing or defending a proceeding, or asserting or contradicting an issue in a proceeding, unless there is a nonfrivolous basis in law and fact for doing so), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board found that Cramer violated Prof.Cond.R. 8.4(h) by engaging in conduct not specifically prohibited by the Rules of Professional Conduct that adversely reflected on her fitness to practice law *and* that her conduct in violation of other professional-conduct rules was

sufficiently egregious to warrant an additional finding that she violated Prof.Cond.R. 8.4(h). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

{¶ 41} Cramer objects to the board's findings of misconduct with respect to this count, arguing that the board was required to review the evidence de novo and that it failed to do so because it adopted the probate and appellate courts' findings that she violated Civ.R. 11 and R.C. 2323.51. A disciplinary hearing is not a substitute for an appeal, but regardless, we do not find that the board's adoption of the probate court's factual findings demonstrates that the board conducted anything but a de novo review. Having reviewed the record, including Cramer's numerous filings in the probate proceedings, we find that relator has established by clear and convincing evidence that Cramer violated Prof.Cond.R. 3.1, 8.4(d), and 8.4(h). We therefore overrule Cramer's second objection to the board's findings of fact and her first objection to the board's conclusions of law.

**Sanction**

{¶ 42} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and Mitigating Factors*

{¶ 43} The board found that just one mitigating factor is present—Cramer has no prior disciplinary record. *See* Gov.Bar R. V(13)(C)(1). As for aggravating factors, the board found that Cramer had (1) acted with a dishonest and selfish motive, (2) committed multiple offenses, (3) showed a lack of cooperation in the disciplinary process, (4) submitted false evidence or false statements or engaged in deceptive practices during the disciplinary process by submitting a false affidavit, and (5) refused to acknowledge the wrongful nature of her conduct. *See* Gov.Bar R. V(13)(B)(2) and (4) through (7).

{¶ 44} The board offered a nine-page explanation detailing Cramer's extensive and repeated failure to cooperate in the disciplinary process. Cramer failed to provide answers to relator's discovery request and made a false allegation that relator had not provided discovery, necessitating a formal pretrial hearing to discuss discovery issues. Because Cramer refused to divulge the name of one of the prospective buyers that she had purportedly identified for the real property, the panel chair had to order her to provide the name.

{¶ 45} Cramer initially denied that relator had furnished her with a copy of a transcript, and upon being informed that the document had been provided in PDF format on a flash drive with other discovery materials, she eventually acknowledged that she had received it but stated that she did not want to open an "executable" file. Cramer later requested that the board issue all its orders by telephone or text message. The panel chair denied the request and instructed Cramer to check her e-mail account on a timely and regular basis.

{¶ 46} After relator objected to Cramer's proposed submission of numerous grievances that she had filed against judicial officers and attorneys, on the ground that those grievances are required to remain confidential prior to a determination of probable cause, *see* Gov.Bar R. V(8)(A)(1)(a), Cramer stated her intention to call relator's counsel as witnesses. In a 13-page response to relator's motion in limine, Cramer once again made spurious allegations—this time against Taneff and relator—and demanded that the complaint against her be dismissed.

{¶ 47} Cramer's failure to cooperate culminated in her conduct during the disciplinary hearing. She arrived more than an hour late on both days of the hearing—even after the panel chair had agreed to start the hearings at 10:00 a.m. and 9:00 a.m., respectively, to accommodate Cramer's purported sleep disorder. On the first day, Cramer explained that it had taken her all night to drive from Cleveland to Columbus and stated that it was the first time that she had made the trip without stopping for the night. On the second day, Cramer called the board at

9:02 a.m. to state that she would be late because she had slept through her alarms. Although her hotel was only three blocks away, she did not arrive at the hearing until 10:35 a.m. The panel chair viewed Cramer's tardiness as part of her ongoing pattern of failing to comply with the panel's orders and directives.

{¶ 48} The board described Cramer's participation at the hearing as rambling and argumentative, and it noted that she was unable to answer questions without turning the focus to how she had allegedly been victimized by the probate court and the disciplinary process. The panel chair repeatedly had to admonish her to answer the question that was being asked. And although Cramer repeatedly referred to the "ever-changing" allegations against her, she acknowledged that relator had never filed an amended complaint.

{¶ 49} Cramer was fundamentally unprepared to present her own case; she introduced no exhibits and wanted to call a witness using her cellular phone. Although Cramer claimed to have "exercised due diligence," she acknowledged that many things were not prepared the way she wanted them prepared. She stated that she could not do more physically given the unpredictable nature of her disability and the fact that she had worked through the night on five of the prior eight days. Cramer also indicated that she had retired from the Department of Justice due to her deteriorating health. But when asked whether her physical issues had impacted her ability to practice law, Cramer stated that she had been unaware that her mental and physical health would be considered at the hearing. After relator's counsel stated that he intended to file a motion for an examination pursuant to Gov.Bar R. V(15)(C)(1)(b), Cramer stated that she had no objection and would cooperate with the exam.

{¶ 50} Following the hearing, the panel chair issued an order directing Cramer to file an amended exhibit list and exhibits on or before June 7, 2019, and instructed her to include any reports and documents from a qualified healthcare professional she wished to have the panel consider in mitigation. Cramer filed her

initial exhibit list three days late, supplemented it more than two weeks later, and finally tendered hard copies of all her exhibits more than one month late—but she never submitted any medical records. The panel chair excluded 26 of her 110 exhibits on the ground that they were neither offered nor referred to at the hearing and excluded one exhibit because it has been previously admitted. And although the panel chair ordered the parties to file posthearing briefs on or before June 28, 2019, Cramer never complied with that order.

{¶ 51} Cramer raises ten objections to the aggravating and mitigating factors found by the board. But as summarized above, the record supports the board's findings. We therefore overrule objections 10 through 12, 14 through 17, and 21 through 23.

*Relevant Precedent*

{¶ 52} In determining the appropriate sanction to recommend for Cramer's misconduct, the board noted that the sanctions we have imposed on lawyers who had made false statements concerning the qualifications or integrity of a judicial officer range from a six-month suspension to a two-year suspension with the second year stayed on conditions. *See, e.g.*, *Disciplinary Counsel v. Proctor*, 131 Ohio St.3d 215, 2012-Ohio-684, 963 N.E.2d 806 (imposing a six-month suspension on an attorney who had engaged in undignified or discourteous conduct that was degrading to a tribunal and had recklessly made false statements concerning the integrity of a judicial officer in a motion for relief from judgment and an appellate brief); *Disciplinary Counsel v. Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 481 (imposing a two-year suspension, with the second year conditionally stayed, on an attorney who had knowingly or recklessly made in an appellate brief false allegations that a judge's rulings against her were influenced by racial and gender bias and had engaged in dishonest conduct that was prejudicial to the administration of justice by distributing settlement funds in contravention of a court order). However, the panel found this case to be most

similar to two cases in which we imposed indefinite suspensions on attorneys who—like Cramer—repeatedly leveled false or unfounded allegations against judges and opposing counsel and refused to acknowledge the wrongful nature of their misconduct.

{¶ 53} In *Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271, an attorney falsely accused several common-pleas-court judges of bias in the execution of their duties, with "nothing beyond conjecture, rumor, and innuendo" to support her charges, *id.* at ¶ 9. She also repeatedly leveled against a federal judge unfounded accusations of racial bias and other impropriety and filed a baseless defamation suit against two attorneys who were her opposing counsel in a sexual-harassment case. As aggravating factors, we found that Frost had engaged in dishonesty, a pattern of misconduct, and multiple offenses, that she had failed to acknowledge the wrongfulness of her conduct, and that her attacks on judges and other public officials had eroded public confidence in the judiciary. *Id*. at ¶ 37. Just one mitigating factor was present—the absence of a prior disciplinary record. *Id*. at ¶ 36.

{¶ 54} Similarly, in *Disciplinary Counsel v. Pullins*, 127 Ohio St.3d 436, 2010-Ohio-6241, 940 N.E.2d 952, an attorney recklessly filed affidavits of disqualification and other court documents containing unfounded accusations against two judges regarding the performance of their official duties. He also falsely notarized a document that he had signed on behalf of his wife, submitted that document to a court, and caused two subpoenas to be issued in an inactive case to further his own personal agenda.

{¶ 55} As aggravating factors, we found that Pullins had acted with a dishonest and selfish motive, engaged in a pattern of misconduct, committed multiple offenses, given false and dishonest explanations of his actions, refused to acknowledge the wrongful nature of his misconduct, and caused harm to innocent third parties and the reputations of the judges whose integrity he had impugned.

We also attributed aggravating effect to psychological issues that remained unaddressed due to Pullins's premature termination of his contract with the Ohio Lawyers' Assistance Program ("OLAP"). *Id*. at ¶ 82-83. The only mitigating factors were the absence of a prior disciplinary record and Pullins's full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings. *Id*. at ¶ 74.

{¶ 56} In indefinitely suspending Frost and Pullins for their repeated unfounded attacks on the judicial system and other dishonest conduct, we noted that their misconduct may have been related to unaddressed mental-health disorders. Consequently, we conditioned their reinstatement to the profession on the submission of proof to a reasonable degree of medical certainty that they were fit to return to the competent, professional, and ethical practice of law. *Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271, at ¶ 43; *Pullins* at ¶ 88.

{¶ 57} Like Frost and Pullins, Cramer repeatedly and falsely accused a judge and a magistrate of bias and corruption, refused to acknowledge the wrongful nature of her conduct, and caused considerable harm—not only to the public officials whom she had attacked but also to the judiciary as a whole. The board also found that Cramer's conduct throughout the disciplinary proceedings demonstrated a pattern of disrespect for the disciplinary process and raised serious questions regarding her fitness to provide competent and professional legal representation to her clients going forward. Furthermore, the board expressed concern that Cramer's misconduct may be related to unaddressed mental- or physical-health conditions. Therefore, the board recommends that as conditions of her reinstatement, she be required to (1) submit to an OLAP evaluation and comply with any treatment recommendations arising from that evaluation, (2) submit an opinion from a qualified healthcare professional that she is able to resume the competent, ethical, and professional practice of law, and (3) provide proof that she has paid the fees and costs assessed on her by the probate court.

{¶ 58} As her final three objections, Cramer contends that she should not be indefinitely suspended from the practice of law simply for filing a grievance against a judge, for filing a motion to consolidate hearings and a motion to remove a politically appointed and negligent ancillary administrator, or for zealously representing a client within the parameters of the law. Renewing her claim that the charges against her were "ever-changing," she urges this court to completely exonerate her, dismiss relator's complaint, and grant her other forms of relief not available in disciplinary proceedings.

{¶ 59} Cramer's objections to the recommended sanction grossly mischaracterize her conduct in the probate proceedings in an attempt to recast her actions as an appropriate and reasoned response to the alleged but unsubstantiated misconduct of others. But we have already overruled more than 20 objections directed at the board's findings and determined—based on clear and convincing evidence—that she committed the rule violations alleged in relator's complaint.

{¶ 60} Cramer's misconduct, the presence of numerous aggravating factors—including the submission of false evidence and statements during this disciplinary proceeding—and the single mitigating factor that Cramer has never before been disciplined by this court, are strikingly similar to the circumstances in *Frost* and *Pullins*. We therefore overrule Cramer's last three objections and conclude that the appropriate sanction in this case is an indefinite suspension. Cramer's pattern of levying baseless attacks against virtually every person involved in the underlying probate case has now expanded to include allegations that the panel members and the board have distorted the record, withheld critical facts and evidence, and misled this court. And in her hearing testimony, she steadfastly maintained that she herself had done nothing wrong and she described her own conduct as "brave and exemplary."

{¶ 61} Cramer's profound inability to recognize the wrongfulness of her own actions, combined with her tardiness and evident lack of preparation for her

own disciplinary hearing, support the board's finding that her misconduct may be the byproduct of unaddressed physical- or mental-health issues. We therefore agree that her reinstatement to the practice of law must be conditioned on the submission of proof that she has completed an OLAP assessment, complied with any resulting treatment recommendations, and obtained the opinion of a qualified healthcare professional that she is capable of resuming the competent, ethical, and professional practice of law.

### Conclusion

{¶ 62} Accordingly, Marilyn Abrienne Cramer is indefinitely suspended from the practice of law in Ohio. In addition to the conditions for reinstatement set forth in Gov.Bar R. V(25), Cramer shall be required to submit proof (1) that she has submitted to an evaluation by OLAP and complied with any recommendations resulting from that evaluation, (2) that she has obtained an opinion from a qualified healthcare professional that she is able to resume the competent, ethical, and professional practice of law, and (3) that she has paid the fees and costs assessed against her in the March 22, 2018 judgment entry of the Franklin County Court of Common Pleas, Probate Division, in case No. 567794A. Costs are taxed to Cramer.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Marilyn A. Cramer, pro se.

————————————