[Cite as *Stoner v. Salon Lofts, L.L.C.*, 2019-Ohio-5354.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sean A. Stoner, | : | |
| Plaintiff-Appellee, | : | No. 19AP-262 (C.P.C. No. 10CV-13904) and |
| v. | : | No. 19AP-263 (C.P.C. No. 15CV-2946) |
| Salon Lofts, LLC, et al., | : | |
| Defendants- Appellants. | : | (ACCELERATED CALENDAR) |

D E C I S I O N

Rendered on December 26, 2019

**On brief:** *Cooper & Elliott, LLC*, *Adam P. Richards*, and *Barton R. Keyes,* for appellee. **Argued:** *Adam P. Richards.*

**On brief:** *Littler Mendelson, P.C., Thomas M. L. Metzger,* and *Brooke E. Niedecken*, for appellants. **Argued:** *Thomas M. L. Metzger.*

APPEALS from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendants-appellants, Salon Lofts, LLC and Daniel Sadd, appeal from a judgment of the Franklin County Court of Common Pleas denying their motion to vacate, modify, or correct the arbitration award entered in favor of plaintiff-appellee, Sean A. Stoner. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} On April 7, 2015, Stoner filed a petition to compel arbitration regarding a dispute on Stoner's claimed ownership interest in Salon Lofts. Prior to Stoner's petition to compel arbitration, the parties had been involved in litigation dating back to 2010 when Stoner and Buckheel Investments, LLC filed a complaint against appellants and Salon Lofts Franchising, LLC seeking a declaratory judgment that Stoner owned a profit interest in

Salon Lofts based on Salon Lofts' Operating Agreement. Appellants and Salon Lofts Franchising filed several counterclaims in response to the initial 2010 complaint. The 2015 petition to compel arbitration related solely to Stoner's claim that he held a five-percent interest in Salon Lofts under the terms of the Operating Agreement; the remainder of appellants' counterclaims remain pending in the trial court.

{¶ 3} The matter proceeded to arbitration on December 18, 2017. Following the arbitration hearing, the arbitrators issued an April 24, 2018 decision and award determining Stoner, a former employee of Salon Lofts, held a five-percent interest in Salon Lofts and that Stoner was entitled to payment for his five-percent interest upon the sale of Salon Lofts pursuant to an Asset Purchase Agreement dated February 15, 2012. Based on that conclusion, the arbitrators awarded Stoner $709,557.00 in damages, plus statutory interest dating from February 15, 2012 until payment of the award. Subsequently, on August 8, 2018, the arbitrators issued a supplemental decision on Stoner's petition for attorneys' fees and arbitration-related costs, awarding Stoner $159,554.58 in arbitration related fees and costs.

{¶ 4} Appellants then moved to vacate, modify, or correct both the award and supplemental award, arguing the arbitrators exceeded their authority in calculating the dollar amount of Stoner's award. Stoner moved the trial court to confirm both the award and supplemental award.

{¶ 5} In a March 7, 2019 decision and entry, the trial court granted Stoner's first amended application to confirm the arbitration award and denied appellants' motion to vacate, modify, or correct the arbitration award and motion to vacate or modify the arbitrators' supplemental decision on attorneys' fees and arbitration costs. In its decision, the trial court concluded the arbitrators did not exceed their authority in determining whether Stoner had an interest in Salon Lofts and the dollar amount Stoner should be paid for that interest. Subsequently, on March 25, 2019, the trial court issued a "Final Judgment" in favor of Stoner, ordering appellants to pay Stoner a total award of $869,111.58 plus interest and attorneys' fees. Appellants timely appeal.

## II. Assignments of Error

{¶ 6} Appellants assign the following errors for our review:

> 1. The trial court erred in denying appellants' motion to vacate, modify, or correct arbitration award.

2. The trial court erred in denying appellants' motion to vacate or modify the arbitrators' supplemental decision on claimant's petition for attorneys' fees and arbitration related costs.

3. The trial court erred in granting plaintiff's first amended application to confirm award.

4. To the extent the trial court's March 25, 2019 final order is considered a final judgment on all claims in this case, the trial court erred.

For ease of discussion, we address appellants' assignments of error out of order.

### III.  First and Third Assignments of Error – Arbitration Award

{¶ 7}    In their first assignment of error, appellants argue the trial court erred in denying their motion to vacate, modify, or correct the arbitration award.  In their third assignment of error, appellants argue the trial court erred in granting Stoner's first amended application to confirm the award.  Taken together, these two assignments of error assert the trial court erred in confirming the arbitration award.

{¶ 8}   Generally, an appellate court reviews a trial court's decision denying a motion to vacate an arbitration award under an abuse of discretion standard.  *See Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 10th Dist. No. 12AP-579, 2013-Ohio-3211, ¶ 8; *Buchholz v. West Chester Dental Group*, 12th Dist. No. CA2007-11-292, 2008-Ohio-5299, ¶ 22 ("[a]n appellate court will review the common pleas court's decision to confirm, modify, vacate or enforce the arbitration award based on abuse of discretion").  An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  However, when the appeal presents a question of law, the de novo standard of review is proper.  *Licking Hts. Local School Dist.* at ¶ 9, citing *Hudson v. John Hancock Fin. Servs., Inc.,* 10th Dist. No. 06AP-1284, 2007-Ohio-6997, ¶ 8.  *See also Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, ¶ 26 ("when reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo").

{¶ 9}    "Because Ohio law favors and encourages arbitration, courts only have limited authority to vacate an arbitrator's award." *Fraternal Order of Police Capital City*

*Lodge No. 9 v. Reynoldsburg*, 10th Dist. No. 12AP-451, 2013-Ohio-1057, ¶ 22, citing *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, ¶ 13. Pursuant to R.C. 2711, a court may vacate an arbitration award only on the grounds of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his or her authority. *Id.* Here, appellants requested the trial court vacate the award for Stoner on the grounds that the arbitrators exceeded their authority. R.C. 2711.10(D).

{¶ 10} A reviewing court cannot easily overturn an arbitrator's award. *Fraternal Order of Police Capital City Lodge No. 9* at ¶ 23, citing *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407 (1992). " 'It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award.' " *Id.*, quoting *Queen City Lodge No. 69* at 407. The language of the parties' contract determines the parameters of an arbitrator's authority. *Id.*, citing *State Farm Mut. Ins. Co. v. Blevins*, 49 Ohio St.3d 165 (1990), paragraph one of the syllabus.

{¶ 11} Appellants assert the Operating Agreement specifically excepted from arbitration the calculation of the award to Stoner. Section 35 of Salon Lofts' Operating Agreement contains an arbitration clause. In pertinent part, it states:

> Any and all disagreements or controversies arising with respect to the Company and/or this Agreement, or with respect to its application to circumstances not clearly set forth in this Agreement, which are not to be determined under this Agreement by some or all of the Members or by the Board of Managers, shall be settled by binding arbitration * * *.

(No. 19AP-262, Operating Agreement, Section 35, attached to Sept. 22, 2010 Compl.) The Operating Agreement further sets forth certain decisions that are explicitly reserved for the Board of Managers or Members. Section 31 deals with the dissolution of Salon Lofts and states the company "shall be dissolved and its affairs wound up upon the occurrence of * * * [t]he sale of other disposition of substantially all the assets of the Company in accordance with the provisions of this Agreement." (Operating Agreement, Section 31(a)(iv).) Further, Section 31 specifically provides that the Board of Managers or one or more Members shall handle the dissolution process, stating:

> Upon dissolution of the Company, the Board of Managers shall act as liquidator or may appoint one or more of the Members to act as liquidator. The liquidator shall proceed diligently to wind up the affairs of the Company and make final distributions as provided herein and in the Act. The costs of liquidation shall be borne as a Company expense. Until final distribution, the liquidator shall continue to operate the Company properties with all of the power and authority of the Board of Managers. A reasonable time shall be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the liquidator to minimize any losses resulting from liquidation. The liquidator, as promptly as possible after dissolution and again after final liquidation, shall cause a proper accounting to be made by a public accounting firm of the Company's assets, liabilities and operations through the last day of the calendar month in which the dissolution occurs or the final liquidation is completed, as applicable, and shall apply the proceeds of liquidation as provided in Section 19 and in accordance with the time requirements of [section] 1.704-1(b)(2)(ii)(b)(2) of the Regulations. If, in the reasonable judgment of the liquidator, it will not be possible or prudent to complete the liquidation of the Company's assets and the distributions to the Members within that prescribed time period, the liquidator shall, on or before the last day of such period, distribute all remaining assets and liabilities of the Company to a trust, with the liquidator or such other person as the liquidator may appoint serving as the trustee thereof, for the purpose of complying with such timing requirements.

(Operating Agreement, Section 31(b).)

{¶ 12} Thus, pursuant to the Operating Agreement, a matter is appropriate for arbitration unless it is specifically reserved for the Board of Managers or Members. Further, the Operating Agreement explicitly reserves the liquidation process upon dissolution to the Board of Managers. Importantly, appellants do not challenge the arbitrator's determination that Stoner had a five-percent interest in Salon Lofts. Rather, appellants assert the Operating Agreement specifically excepted from arbitration the calculation of the dollar amount award that corresponds to Stoner's five-percent interest.

{¶ 13} The issue becomes, then, whether calculating the dollar amount of Stoner's ownership interest was part of the dissolution process in Section 31(b) of the Operating Agreement. Appellants urge us to construe Section 31(b) as explicitly reserving to the Board

of Managers or its Members the duty of determining the value of any shares at liquidation. They argue that when the arbitrators determined the value of Stoner's five-percent interest in Salon Lofts, they essentially determined the value of the proceeds of the liquidation, thus exceeding their authority.

{¶ 14} Section 31(b) of the Operating Agreement references Section 19, which covers distribution upon winding-up. Section 19 provides:

> **19. Distributions Upon Winding-Up.** Upon dissolution of the Company and the winding-up of the Company's affairs in accordance with Section 31(b), the assets of the Company (after giving effect to the provisions of Section 15) shall, subject to the requirements of applicable Ohio law, be applied and distributed in the following order of priority:
>
> **(a) Creditors.** To the payment of debts and liabilities of the Company to creditors of the Company (including those to Members other than liabilities to Members for distributions), including, without limitation, expenses of winding-up and the establishment of any reserves against liabilities and obligations of the Company which the Board of Managers deems appropriate.
>
> **(b) Members.** To the Members in accordance with, and in proportion to, their respective positive Capital Account balances.

(Emphasis sic.) (Operating Agreement, Section 19.) Appellants rely on the interplay of Sections 19 and 31(b) for the proposition that any valuation of Stoner's five-percent interest must first account for Salon Lofts' liabilities and debts. Because the arbitrators calculated Stoner's five-percent interest based on the 2012 sale of Salon Lofts instead of allowing the Board of Managers to engage in the valuation process set forth in Sections 19 and 31, appellants argue the arbitration award exceeds the arbitrators' authority.

{¶ 15} However, appellants' argument that the interplay of Sections 19 and 31(b) of the Operating Agreement controls the outcome of this case ignores other vital provisions of the Operating Agreement and the Asset Purchase Agreement. In particular, Section 14 of the Operating Agreement specifically details ownership interests and provides that Stoner's ownership units "shall be issued on such terms and conditions and for such price (if any) as shall be determined by the Board of Managers." (Operating Agreement, Section 14(b)(i).) The arbitrators found, and the parties do not dispute, that Salon Lofts agreed to

give Stoner 50 ownership units, equivalent to a five-percent interest, as incentive for Stoner to accept employment with Salon Lofts. The nature of those units reflected a profit interest in Salon Lofts which, upon the sale of the company under the Asset Purchase Agreement, converted from a profits interest into an equity interest.

{¶ 16} Stoner's employment with Salon Lofts terminated in 2010. Section 30(B)(iii) of the Operating Agreement provides appellants with the option of purchasing the ownership units of a "Terminated Member" within 60 days of the terminated member's request on a decision related to the purchase option. Appellants did not exercise the option to purchase Stoner's ownership units within that timeframe, and thus, appellants could no longer compel Stoner to sell his units back to Salon Lofts. We agree with the arbitrators that the Operating Agreement is ambiguous as to whether a Terminated Member under Section 30(B)(iii) for whom Salon Lofts does not exercise the option to repurchase the ownership units remains a Member within the meaning of Sections 19 and 31 for purposes of winding-up and dissolution. This ambiguity permits the consideration of extrinsic evidence to discern the parties' intent with respect to the ambiguity. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635 (1992), syllabus ("[o]nly when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions").

{¶ 17} Critically, the arbitrators made the factual finding that appellants and Stoner agreed, upon his acceptance of the five-percent ownership interest, that appellants would purchase Stoner's ownership interest "in connection with any type of sale by Salon Lofts." (No. 19AP-263, Arbitrators' Award, ¶ 27(e), attached to Aug. 13, 2018 Pl.'s Mot. as Ex. C.) The 2012 Asset Purchase Agreement, in turn, provides:

> **7.8 <u>Redemption of Seller Interests</u>**. Sellers shall have taken all action necessary to cause all equity interests in Sellers owned by any Person other than Member or another Seller to be redeemed prior to or immediately following the Closing * * *.

(Emphasis sic.) (No. 19AP-262, Asset Purchase Agreement, Section 7.8.)

{¶ 18} Based on Section 7.8 of the Asset Purchase Agreement, the actual sale of Salon Lofts in 2012 required the redemption of Stoner's ownership unit as part of the sale.

Accordingly, we agree with the arbitrators' construction of both the Asset Purchase Agreement and the Operating Agreement that redemption of Stoner's ownership interest is a part of the sale of Salon Lofts and not a part of the subsequent winding-up provisions outlined in Sections 19 and 31. Because the Asset Purchase Agreement required the redemption of Stoner's ownership interest prior to the winding-up process, we further agree with the trial court that the arbitrators did not exceed their authority in assigning a dollar value to Stoner's five-percent interest at the time of the 2012 sale.

{¶ 19} "So long as there is a good-faith argument that an arbitrator's award is authorized by the contract that provides the arbitrator's authority, the award is within the arbitrator's power." *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, ¶ 7, citing *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177 (1991), syllabus. Here, the arbitrators used the $14,191,147.19 sale price of Salon Lofts under the 2012 Asset Purchase Agreement to calculate the value of Stoner's five-percent interest at the time of sale as $709,557.00. Moreover, the arbitrators noted that appellants did not provide any evidence of any debts or liabilities that should offset the value of Stoner's five-percent interest even if they were to subject Stoner's ownership interest to the winding up provisions of Sections 19 and 31 of the Operating Agreement.

{¶ 20} Thus, we find the arbitrators' award was authorized by the Operating Agreement and within the arbitrators' power. Because the arbitrators did not exceed their authority, the trial court did not err in granting Stoner's first amended application to confirm the award and in denying appellants' motion to vacate, modify, or correct the arbitration award. Therefore, we overrule appellants' first and third assignments of error.

## IV. Second Assignment of Error – Attorneys' Fees and Arbitration Costs

{¶ 21} Appellants' second assignment of error asserts the trial court erred in denying appellants' motion to vacate or modify the arbitrators' supplemental decision on attorneys' fees and arbitration-related costs. Although appellants assign this as error, appellants did not separately argue this assignment of error in the body of their appellate brief. As a result, appellants' brief violates App.R. 16(A)(7). *Taneff v. Lipka*, 10th Dist. No. 18AP-291, 2019-Ohio-887, ¶ 29. Although an appellate court has discretion whether to consider an assignment of error presented for review if the party fails to argue the assignment of error separately in the brief, here appellants conceded during oral argument

that they are not appealing the issue of attorneys' fees and arbitration-related costs. *Taneff* at ¶ 30, citing App.R. 12(A)(2). Accordingly, we overrule appellants' second assignment of error.

## V. Fourth Assignment of Error – Finality of Judgment as to All Claims

{¶ 22} In their fourth and final assignment of error, appellants argue the trial court erred to the extent its March 25, 2019 judgment entry could be considered a final judgment on all claims. The parties agree that the March 25, 2019 judgment entry pertains only to the finality of the arbitration award to Stoner in the aggregate amount of $869,111.58 plus interest and attorneys' fees. Because the March 25, 2019 judgment entry does not purport to dispose of the remaining claims docketed under Franklin C.P. No. 10CV-13904, we overrule appellants' fourth and final assignment of error, and we clarify that additional claims between the parties remain pending in Franklin C.P. No. 10CV-13904.[1]

## VI. Disposition

{¶ 23} Based on the foregoing reasons, the trial court did not err in determining the arbitrators did not exceed their authority in calculating the dollar amount of Stoner's award and did not err in confirming the arbitration award to Stoner in the amount of $869,111.58 plus interest and attorneys' fees. Having overruled appellants' four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and SADLER, J., concur.

---

[1] The litigation between the two parties commenced in 2010 under Franklin C.P. No. 10CV-13904. When the matter was ordered to arbitration, the trial court separately docketed the arbitration matter under Franklin C.P. No. 15CV-2946.