[Cite as *Corso Ventures, L.L.C. v. Paye*, 2023-Ohio-127.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Corso Ventures LLC et al.,                    :

      Plaintiffs-Appellants,              :              No. 21AP-510
                                          (C.P.C. No. 20CV-3762)
v.                                            :
                                          (REGULAR CALENDAR)
Ricardo Paye et al.,                          :

      Defendants-Appellees.              :

D E C I S I O N

Rendered on January 17, 2023

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellants. **Argued:** *James P. Connors*.

**On brief:** *Frost Brown Todd LLC*, *Kevin T. Shook*, *Zackary L. Stillings*, and *J. Maxwell Williams*, for appellees. **Argued:** *Kevin T. Shook*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiffs-appellants, Corso Ventures LLC ("Corso Ventures") and Christopher J. Corso, appeal from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendants-appellees, Ricardo Paye, also known as Gere Jordan, and Subvertical Limited LLC ("Subvertical Limited"). For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} The pertinent facts are not in dispute. Jordan is the sole member of Subvertical Limited, the entity that publishes the website DelawareOhioNews.com. Jordan writes articles and other content published on the website, often using the pen name

Ricardo Paye.  Jordan characterizes the website as a "satirical website" that publishes fictional stories to "poke fun" at issues of local or national interest.  (Jordan Aff. at ¶ 4.)  The website contains an "about us" section that states:

> Delaware Ohio News is an online news and content source dedicated to Delaware, Ohio. Founded in the year 1808, we strive to be Delaware's premier news source, second only to the illustrious Delaware Gazette. Although we were the first Delaware, Ohio newspaper, they remain the lords of Delaware news media. That's why we're suicidal and on so many drugs.
>
> With all of that said, everything on this website is made up. Do not rely on anything said here.
>
> Don't believe us? Read our Legal Statements.

(Jordan Aff. at ¶ 5.)  The Legal Statement section of the website contains the following statement:

> All stories herein are parodies (satire, fiction, fake, not real) of people and/or actual events. All names are made up (unless used in a parody of public figures) and any similarity is purely coincidental.
>
> DelawareOhioNews.com is not affiliated with Ohio Wesleyan University or any other publication.
>
> DelawareOhioNews.com is intended for use by those age 18 and older. If you think your child can handle this humor, it is up to you. We are not role models.

(Jordan Aff. at ¶ 5.)

{¶ 3}  In January 2020, Jordan saw a story on the local news that Short North Food Hall, a restaurant in Columbus, had established a dress code prohibiting certain articles of clothing and accessories.  Jordan described the dress code as prohibiting numerous articles of clothing associated with Black culture.  The news report identified Corso Ventures as the parent company of Short North Food Hall and stated that Christopher Corso owned the restaurant.  In response to the local news report, Jordan wrote and published three articles on his website with the following titles: "Corso Ventures' Newest Bar, Nigghers, Coming to Short North This Fall," "Short North Food Hall Literally Just Googled 'How to Keep Black People Out of Bars,' " and "White Wednesdays at Short North Food Hall."  (Jordan Aff. at

¶ 15-17.) Those articles appeared on the website surrounded by other headlines that Jordan characterizes as satirical, including "Socially Distanced July 4th Parade Will be 86 Miles Long, Last 40 Hours," "Health Department: Please Cover Your Dog's Anus to Prevent Spread of Coronavirus," "VA Patients to Share Prosthetics After Kasich Denies Funds," and "Ohio Gov. John Kasich Legalizes Exhumation of Confederate Soldiers Statewide." (Jordan Aff. at ¶ 6.)

{¶ 4} In response to the publications of the articles, appellants, through counsel, wrote a May 17, 2020 letter to Paye and Subvertical Limited seeking to have the articles removed from the website. When appellees did not respond to the letter, appellants filed a complaint on June 11, 2020 alleging the articles were defamatory. Appellants described the articles as "highly offensive, outrageous, malicious, and hateful racist articles and publications about [appellants]." (Compl. at ¶ 7.) The complaint contained eight causes of action: (1) defamation, (2) slander, slander per se, and libel, (3) false light/invasion of privacy, (4) declaratory and injunctive relief, (5) negligence, (6) tortious interference with business relationships and contracts, (7) fraud and/or negligent misrepresentation, and (8) civil conspiracy. Appellants sought compensatory and punitive damages in an amount exceeding $2,000,000 as to each claim in Counts 1, 2, 3, 5, 6, 7, and 8 as well as removal of all defamatory posts and statements from all websites and publications.

{¶ 5} Appellees filed a motion for summary judgment on March 18, 2021 arguing the publications were satire and, therefore, protected speech under the First Amendment and Ohio law. Because all of appellants' claims depended on a finding that the publications are defamatory, appellees argued the claims fail as a matter of law as the publications are protected satire and thus could not constitute defamation. In support of their motion for summary judgment, appellees relied on Jordan's affidavit, copies of the three articles that were the subject of the complaint, copies of the website's about us section and legal disclaimer, and images from the website showing the headlines of the other articles surrounding the articles related to appellants. Additionally, appellants filed copies of local news reports related to the dress code at Short North Food Hall from the websites for WBNS 10TV, The Columbus Dispatch, NBC 4 WCMH-TV, and Columbus Alive. Some of the articles related to Short North Food Hall issuing an apology for the dress code after backlash on social media. The article from NBC 4 WCMH-TV quoted a joint statement

from Corso Ventures, NAACP Columbus, the Columbus Community Relations Commission, and the Columbus Urban League that stated " '[t]he dress code was clearly a mistake. Sadly it raised a number of concerns about racism and bigotry that, while never intended, are clearly understandable. Chris Corso and his entire team are truly sorry for the error.' " (Appellees' Mot. for Summ. Jgmt., Ex. A-7.)

{¶ 6} Appellants filed a memorandum contra to the motion for summary judgment on May 27, 2021, arguing summary judgment was inappropriate because the statements were defamatory and neither Corso nor Corso Ventures is the owner of Short North Food Hall. Appellants argued the articles were defamation per se because they falsely claim Corso is racist. That same day, appellants also filed a motion to strike appellees' motion for summary judgment and accompanying affidavits and exhibits as exceeding the page limits set in the local rules and as relying on improper Civ.R. 56(C) evidence.

{¶ 7} In a September 7, 2021 decision and entry, the trial court granted appellees' motion for summary judgment and denied appellants' motion to strike. More specifically, the trial court determined the publications are protected satire and cannot be labeled as defamatory. Thus, the trial court concluded the defamation claim must fail as a matter of law, and all the remaining claims additionally fail because they all depend upon a finding that the speech was not protected speech and are derivative of the defamation claim. Accordingly, the trial court entered judgment in favor of appellees as to all causes of action in the complaint. Appellants timely appeal.

## II. Assignments of Error

{¶ 8} Appellants assign the following errors for our review:

> 1. The trial court erred by granting defendants' motion for summary judgment.
>
> 2. The trial court erred by deciding defendants' motion for summary judgment as a matter of law rather than as a question of fact for the jury.
>
> 3. The trial court erred by failing to find that there were both defamatory and non-defamatory interpretations of defendants' slanderous publications about plaintiffs which are questions of fact for the jury.

4. The trial court erred by deciding as a matter of law that a reasonable reader would not believe the statements in the articles at issue were actual statements of fact about plaintiffs rather than a satirical spoof.

5. The trial court erred by finding that "the offending articles at issue in the Complaint, when read in the proper context, can only be viewed as jokes, parodies, or satirical criticisms."

6. The trial court erred by failing to consider whether the defendants acted with the requisite degree of fault in publishing false defamatory statements about plaintiffs.

7. The trial court erred by denying plaintiffs' motion to strike defendants' affidavits and exhibits, and motion for summary judgment.

### III. First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error – Defamation

{¶ 9} Appellants' first, second, third, fourth, fifth, and sixth assignments of error are interrelated, and we address them jointly. Taken together, these six assignments of error stand for the proposition that the trial court erred in concluding the publications are protected speech that do not constitute defamation and granting summary judgment in favor of appellees on that basis.

{¶ 10} An appellate court reviews summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 10th Dist. No. 20AP-563, 2021-Ohio-3898, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 11} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule

with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 12} Appellants' complaint alleged claims of: (1) defamation, (2) slander, slander per se, and libel, (3) false light/invasion of privacy, (4) declaratory and injunctive relief, (5) negligence, (6) tortious interference with business relationships and contracts, (7) fraud and/or negligent misrepresentation, and (8) civil conspiracy. All the causes of action stem from appellees' publications of the allegedly defamatory articles on the website.

{¶ 13} " 'Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business.' " *Webber v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 17AP-323, 2017-Ohio-9199, ¶ 35, quoting *Knowles v. Ohio State Univ.*, 10th Dist. No. 02AP-527, 2002-Ohio-6962, ¶ 22. "Generally, slander refers to spoken defamatory words and libel refers to written defamatory words." *Id.*, citing *Holley v. WBNS 10TV, Inc.*, 149 Ohio App.3d 22, 2002-Ohio-4315, ¶ 29 (10th Dist.).

{¶ 14} To succeed on a claim of defamation, a plaintiff must demonstrate: " ' "(1) that a false statement was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement." ' " *Pratt v. Univ. of Cincinnati*, 10th Dist. No. 17AP-729, 2018-Ohio-2162, ¶ 17, quoting *Rarden v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-225, 2012-Ohio-5667, ¶ 27, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist.1996). Further, to survive a motion for summary judgment in a defamation case, the plaintiff must make a sufficient showing on each of the five essential elements. *Webber* at ¶ 36, citing *Murray v. Knight-Ridder, Inc.*, 7th Dist. No. 02 BE 45, 2004-Ohio-821, ¶ 14.

{¶ 15} The dispute here focuses on the second element of a defamation claim: whether the statements were defamatory. Appellees assert, and the trial court agreed, that all of appellants' claims must fail because the publications were protected speech in the form of parody or satire and therefore could not constitute defamation. "Whether certain statements alleged to be defamatory are actionable or not is a matter for the court to decide as a matter of law." *Webber* at ¶ 37, citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 78, citing *Yaeger v. Local Union 20, Teamsters & Chauffeurs Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372 (1983). *See also Wampler v. Higgins*, 4th Dist. No. 2000 CA 5 (May 31, 2000), citing *Yaeger* at 372 ("[a] court must decide as a matter of law whether a certain statement alleged to be defamatory is actionable"). "In determining whether a statement is defamatory as a matter of law, a court must review the totality of the circumstances, consider the statement within its context rather than in isolation, and determine whether a reasonable person would interpret that statement as defamatory." *Webber* at ¶ 37, citing *Am. Chem. Soc.* at ¶ 79.

{¶ 16} The United States Supreme Court "has repeatedly reminded us that almost all speech is protected other than 'in a few limited areas.' " *Novak v. Parma*, 932 F.3d 421, 427 (6th Cir.2019), quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010) (the "limited areas" of speech not protected by the First Amendment include speech expressed as part of a crime, obscene expression, incitement, and fraud). It is "clearly established" that parody is protected speech. *Id.*, citing *Hustler Magazine v. Falwell*, 485 U.S. 46, 56-57 (1988).

{¶ 17} The question here is whether the articles Jordan authored and published on the website were parody and, therefore, protected speech. Appellants argue it is not clear from the articles that the author intends the statements to be understood as parody or satire and that some people may believe the articles are stating actual facts. As the Sixth Circuit Court of Appeals has recently explained, "[o]ur nation's long-held First Amendment protection for parody does not rise and fall with whether a few people are confused. Instead, we must apply a 'reasonable reader' test." *Novak* at 427, citing *Hustler Magazine* at 56-57. Moreover, "[s]peech that 'could not reasonably have been interpreted as stating actual facts' is a parody, even if 'patently offensive.' " *Id.*, quoting *Hustler Magazine* at 57. "The test is not whether one person, or even ten people, or even one hundred people were confused" by the publications. *Id.* "Indeed, the genius of parody is that it comes close

enough to reality to spark a moment of doubt in the reader's mind before she [or he] realizes the joke." *Id.*

{¶ 18} Viewing the totality of the circumstances, we conclude the articles here, when read in context, could not reasonably have been interpreted as stating actual facts. *See Webber* at ¶ 37 (a court must review the totality of the circumstances and consider the statement within its context to determine whether a reasonable person would interpret the statement as defamatory); *Novak* at 427. This case involves three articles published on Jordan's website. The first is entitled "White Wednesdays at Short North Food Hall," and is formatted as a flyer advertising the supposed event. (Mot. for Summ. Jgmt., Ex. B-3.) The flyer further states "where white is right each and every Wednesday [night]," "no melanin, no cover," "all you can drink white wine," and "free grilled chicken nuggets and land line phones." (Mot. for Summ. Jgmt., Ex. B-3.) The next article is entitled "Corso Ventures' Newest Bar, Nigghers, Coming to Short North This Fall." (Mot. for Summ. Jgmt., Ex. B-3.) The article describes the opening of a new bar and nightclub "that will cater primarily to African Americans," and it uses a misspelling of a racial slur as the supposed name of the business. (Mot. for Summ. Jgmt., Ex. B-3.) This article also attributes quotes to "Principal partner Crisp Corso," including the following:

> Principal partner Crisp Corso says he is excited to finally open a location where black people can give him money without getting in the way of the white people giving him money.
>
> "I have wanted to do a project like this for awhile because I feel like I have a good sense for what those people want and need," Corso said, referring to black people. "I know they haven't felt welcome at our other spots, because they aren't, so Nigghers is an opportunity for us to give them a nightlife experience that is all their own. Hopefully the more urban ones that make us uncomfortable will choose to spend their time here instead of walking up and down high street looking for a white establishment that will let them inside."

(Sic passim.) (Mot. for Summ. Jgmt., Ex. B-3.) The third article is entitled "Short North Food Hall Literally Just Googled 'How to Keep Black People Out of Bars.' " (Mot. for Summ. Jgmt., Ex. B-3.) The first line of this article states "[c]urious how Short North Food Hall came up with their racist dress code? Simple: They Googled it." (Mot. for Summ. Jgmt.,

Ex. B-3.) The rest of the article is a comparison between Short North Food Hall's dress code and the results of the supposed Google search.  Under the reasonable reader test, the tone of all three articles indicates the statements are satirical, aimed at skewering the public news coverage of Short North Food Hall's implementation of the dress code, the ensuing public backlash, and the subsequent apology from Corso and Corso Ventures.  The reasonable reader would not interpret the articles as stating actual facts.  Additionally, the articles appeared on a website that clearly and expressly states that the contents of the website are fictitious and not to be construed as true by the reader.  The other articles on the website are similarly satirical in nature, providing further context that the contents should not be construed as fact.  In light of both the tone of the articles and the express disclaimer on the website that the contents are parody or satire and not to be construed as stating actual fact, we agree with the trial court that the reasonable reader would understand the statements to be parody or satire.

{¶ 19} Despite the satirical tone of the articles and the website more generally, as well as the express disclaimer on the website, appellants argue the statements should not be protected as parody because the accusation of racism is so patently offensive as to constitute defamation per se.  A statement can be defamation "per se," in which both damages and the requisite degree of fault are presumed, where the statement " 'tends to injure a person in his or her trade, profession, or occupation.' "  *Webber* at ¶ 36, quoting *Knowles* at ¶ 24.  As appellants note, "Ohio courts have determined that 'being referred to as racist may, at times, constitute defamation per se.' "  *Id.*, quoting *Lennon v. Cuyahoga Cty. Juvenile Court*, 8th Dist. No. 86651, 2006-Ohio-2587, ¶ 28.  However, what appellants ignore in their argument is that, in order to constitute defamation per se, the statement must first constitute defamation.  As we have stated, a court must consider the totality of the circumstances and consider the statement *in its context* to determine whether the reasonable reader would understand it to be parody or satire and, thus, not defamation. *Webber* at ¶ 37, citing *Am. Chem. Soc.* at ¶ 79; *Novak* at 427.  Any references to racism here, whether expressly stated in the articles or implied through their contents, are still satire or parody when read in context.  Appellants may find the statements to be offensive, but parody and satire are protected speech even where offensive so long as the reasonable reader understands the statements to be parody or satire. *Novak* at 427, quoting *Hustler*

*Magazine* at 57 ("[s]peech that 'could not reasonably have been interpreted as stating actual facts' is a parody, even if 'patently offensive' ").

{¶ 20} Appellants advance several additional arguments as to why the statements should not be protected as parody, all of which are unpersuasive. First, appellants assert the website disclaimer should not provide protection to appellees because if a reader were to conduct an internet search for Corso and find the articles through an outside link, the reader may not see the website's disclaimer. As we stated above, however, the disclaimer and the entire website provide the context in which the statements appear. Appellants cannot divorce the statements from their context. *See Ferreri v. Plain Dealer Publishing Co.*, 142 Ohio App.3d 629, 639 (8th Dist.2001) ("the language of the entire column may be a signal that a specific statement which, sitting alone, would appear to be factual is in actuality a statement of opinion"). Moreover, the tone of the articles, themselves, indicate to the reasonable reader that the contents are satire and parody even when read without the disclaimer. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994), fn. 17 ("[p]arody serves its goals whether labeled or not, and there is no reason to require parody to state the obvious (or even the reasonably perceived)); *Novak* at 428 (parody or satire "need not spoil its own punchline by declaring itself a parody").

{¶ 21} Appellants next assert the trial court erred in failing to consider that Corso is a private individual rather than a public figure. However, appellants misconstrue the trial court's decision. The difference in a defamation claim brought by a private individual versus a public figure lies not in the nature of the allegedly defamatory statement but rather in the degree of fault required to prove the claim. *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 33-34 (while a public official cannot recover damages for defamation unless he proves "actual malice," meaning the statement was made with knowledge that it was false or with reckless disregard for whether it was false, the actual malice standard does not apply in suits by private persons alleging defamation, and Ohio employs the ordinary negligence standard for defamation actions brought by private persons). Here, the trial court correctly focused its analysis on whether the statements were defamatory. Concluding the statements were not defamatory because they were protected parody or satire, the trial court did not need to reach the question of whether appellees acted with the requisite degree of fault.

{¶ 22} Additionally, appellants argue the publications should not be protected as parody or satire because the publications wrongly suggest that appellants are the owners of Short North Food Hall and, thus, they dispute whether they were the creators of the dress code. As appellants note, Short North Food Hall is owned by an entity known as 1112 Short North LLC, not by Corso or Corso Ventures. However, we agree with the trial court that it is immaterial whether appellants actually own Short North Food Hall or were the entities responsible for creating the dress code. Parody and satire, by definition, do not contain assertions of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990), quoting *Hustler Magazine* at 50 ("the [*Greenbelt Coop. Publishing, Inc. v. Bresler*, 398 U.S. 6 (1970) -*Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264 (1974) -*Hustler Magazine v. Falwell*] line of cases provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual"); *see also Murray v. Chagrin Valley Publishing Co.*, 8th Dist. No. 101394, 2014-Ohio-5442, ¶ 32 (the complained-of cartoon "contains no factual assertion" because "[i]t is clearly hyperbole not reasonably capable of being interpreted as a factually defamatory statement"). We are mindful that appellants issued a public apology for the dress code at Short North Food Hall. Thus, whether appellants are the technical owners of Short North Food Hall does not impact the contextual reading of the publications here or impede the reasonable reader's ability to discern the publications are satire.

{¶ 23} Finally, we disagree with appellants that granting summary judgment in this case will create a loophole in defamation law extending an absolute privilege to any person who makes a defamatory statement so long as the person claims the statement was satire or parody. Again, we emphasize that where a statement, under the totality of the circumstances and read in its context rather than isolation, could only be understood as parody or satire by the reasonable reader, the statement does not constitute defamation. *Webber* at ¶ 37; *Novak* at 427. Adding a disclaimer that the statement is satire or parody may help provide the particular context, but it does not end the inquiry as to whether the statement is parody or whether it is defamatory. These cases must be considered on their individual unique facts. *Ferreri* at 639 ("[i]n determining whether an allegedly defamatory statement is fact or opinion, a court must consider the totality of the circumstances" including "the specific language used, whether the statement is verifiable, the general

context of the statement, and finally, the broader context in which the statement appeared," but "the weight given to any one [factor] will conceivably vary depending on the circumstances presented"). In the instant matter, considering the totality of the circumstances and the context in which the statements appear, we agree with the trial court that the publications are protected speech and cannot be labeled as defamatory.

{¶ 24} Having determined the trial court did not err in concluding the statements are parody and/or satire and, thus, not defamatory, appellees are entitled to summary judgment on the defamation claim. Because the remaining claims in the complaint all depend on a finding that the publications were defamatory, those claims similarly fail. *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 15 (holding that "where claims such as tortious interferences and disparagement are based on statements that are qualifiedly privileged under defamation law, the protection afforded those statements * * * must also apply in the derivative claims"). Accordingly, we agree with the trial court that appellees were entitled to summary judgment on all of appellants' claims. Thus, we overrule appellants' first, second, third, fourth, fifth, and sixth assignments of error.

## IV. Seventh Assignment of Error – Motion to Strike

{¶ 25} In their seventh and final assignment of error, appellants assert the trial court erred in denying their motion to strike appellees' affidavits, exhibits, and motion for summary judgment. Although appellants assign the denial of their motion to strike as error, appellants do not separately argue this assignment of error in the body of their brief. As a result, appellants' brief violates App.R. 16(A)(7). *Taneff v. Lipka*, 10th Dist. No. 18AP-291, 2019-Ohio-887, ¶ 29. Pursuant to App.R. 12(A)(2), an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Because appellants have not articulated any argument with respect to the trial court's ruling on the motion to strike, we will disregard this assignment of error. *Stoner v. Salon Lofts, L.L.C.*, 10th Dist. No. 19AP-262, 2019-Ohio-5354, ¶ 21. Accordingly, we overrule appellants' seventh and final assignment of error.

## V. Disposition

{¶ 26} Based on the foregoing reasons, the trial court did not err in granting appellees' motion for summary judgment on appellants' claim of defamation and the additional claims derived from the defamation claim as the publications are protected speech in the form of parody or satire.  Having overruled appellants' seven assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

———————————